# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.  22-2448 |
| | ) | |
| **HUMPHREY-STAVROU ASSOCIATES INC.** | ) | |
| 10220 Old Columbia Road, Suite M | ) | |
| Columbia, Maryland 21046 | ) | |
| | ) | |
| **R & S LLC** | ) | |
| 2661 Riva Road | ) | |
| Annapolis, Maryland 21401 | ) | |
| | ) | |
| **STAVROU ASSOCIATES INC.** | ) | |
| 2661 Riva Road | ) | |
| Annapolis, Maryland 21401 | ) | |
| | ) | |
| **BELLE HILL MANOR LP** | ) | |
| 2661 Riva Road, Suite 320 | ) | |
| Annapolis, Maryland 21401 | ) | |
| | ) | |
| **CHAPEL SPRINGS LP** | ) | |
| 2661 Riva Road | ) | |
| Annapolis, Maryland 21401 | ) | |
| | ) | |
| **COUNTRY VIEW ELDERLY ASSOCIATES LP** | ) | |
| 10220 Old Columbia Road, Suite M | ) | |
| Columbia, Maryland 21046 | ) | |
| | ) | |
| **GLENMORE ASSOCIATES LP** | ) | |
| 2661 Riva Road, Suite 320 | ) | |
| Annapolis, Maryland 21401 | ) | |
| | ) | |
| **HAMMARLEE HOUSE ASSOCIATES LP** | ) | |
| 2661 Riva Road, Suite 320 | ) | |
| Annapolis, Maryland 21401 | ) | |
| | ) | |
| **HAMPSHIRE VILLAGE ASSOCIATES LP** | ) | |
| 2661 Riva Road | ) | |
| Annapolis, Maryland 21401 | ) | |
| | ) | |
| **OAK GROVE ASSOCIATES LP** | ) | |

2661 Riva Road, Suite 320                    )
Annapolis, Maryland 21401                     )
                                              )
**PIN OAK ELDERLY ASSCOCIATES LP**            )
10220 Old Columbia Road, Suite M              )
Columbia, Maryland 21046                      )
                                              )
**RAINIER MANOR 2 LP**                        )
2661 Riva Road, Suite 320                     )
Annapolis, Maryland 21401                     )
                                              )
**RANDOLPH VILLAGE ASSOCIATES LP**            )
2661 Riva Road                                )
Annapolis, Maryland 21401                     )
                                              )
**WINDSOR ELDERLY ASSOCIATES LP**             )
2661 Riva Road, Suite 320                     )
Annapolis, Maryland 21401                     )
                                              )
**WINDSOR FAMILY ASSOCIATES LP**              )
2661 Riva Road, Suite 320                     )
Annapolis, Maryland 21401                     )
                                              )
                    Defendants,               )
                                              )
            and                               )
                                              )
**AVANATH VISTA LAKES, LLC**                  )
1920 Main Street, Suite 150                   )
Irvine, CA  92614                             )
                                              )
**AVANATH LARGO CENTER, LLC**                 )
1920 Main Street, Suite 150                   )
Irvine, CA  92614                             )
                                              )
**CDT SP HENSON CREEK LLC**                   )
5403 West Gray Street                         )
Tampa, FL  33609                              )
                                              )
**HOWARD COUNTY HOUSING COMMISSION**          )
9770 Patuxent Woods Drive                     )
Columbia, MD  21046                           )
                                              )
**MILLTOWNE ASSOCIATES, LP**                  )
6751 Columbia Gateway Drive, 3rd Floor        )
Columbia, MD  21046                           )

)
                        Rule 19 Defendants.             )

_____  )

## COMPLAINT

The United States of America alleges as follows:

### NATURE OF THE ACTION

1.     The United States brings this action to enforce the Fair Housing Act, as amended ("FHA"), 42 U.S.C. §§ 3601-3619; the FHA's implementing regulations, 24 C.F.R. §§ 100.200-205; Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12181-12189; and the ADA Standards for Accessible Design, *see* 28 C.F.R. Pt. 36 Appendices A & D ("ADA Standards").  As set forth below, the United States alleges that Defendants—the owners and developers of numerous residential apartment complexes—have discriminated against persons with disabilities by failing to design and construct covered multifamily dwellings and associated places of public accommodation in a manner that makes them accessible to persons with disabilities.

2.     The FHA requires that certain multifamily dwellings developed for first occupancy after March 13, 1991, defined in the FHA as "covered multifamily dwellings," contain specified accessibility features to make them accessible to persons with disabilities.  42 U.S.C. § 3604(f).

3.     The ADA requires that places of public accommodation built for first occupancy after January 26, 1993 be designed and constructed in a manner that makes them readily accessible to and usable by individuals with disabilities.  42 U.S.C. § 12183(a)(1).  Facilities are not readily accessible to and usable for individuals with disabilities if they do not comply with the requirements of the ADA Standards.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345, 42

U.S.C. § 3614(a) and 42 U.S.C. § 12188(b)(1)(B).

5.     Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of

the events or omissions giving rise to the claims alleged in this action occurred in this District.

## DEFENDANTS

6.     The Defendants have participated in the design, construction, or design and

construction of one or more of the properties identified in the paragraphs below (collectively "the

Subject Properties").

7.     Defendant HUMPHREY-STAVROU ASSOCIATES INC. is a Maryland company

with its principal place of business at 10220 Old Columbia Road, Suite M, Columbia, Maryland

21046.  HUMPHREY-STAVROU ASSOCIATES INC. developed, designed and/or constructed

Pin Oak Village Apartments, Randolph Village Apartments, Woodside Village Apartments,

Largo Center Apartments (renamed Acclaim at Lake Largo), Vistas at Lake Largo, and Henson

Creek Manor I Apartments and Henson Creek Manor II Apartments (renamed Woodland Creek

Apartments).

8.     Defendant R & S LLC is a Maryland company with its principal place of business

at 2661 Riva Road, Annapolis, Maryland 21401.  R & S LLC developed, designed and/or

constructed Chapel Springs Senior Apartments, Hampshire Village, Overland Garden

Apartments, Rainier Manor Phase II, Villages at Belle Hill Apartments, Windsor Crossing

Family Apartments, and Windsor Crossing Senior Apartments. .

9.     Defendant STRAVOU ASSOCIATES INC. is a Maryland company with its

principal place of business at 2661 Riva Road, Annapolis, Maryland 21401.  STRAVOU

ASSOCIATES INC. developed, designed and/or constructed Burgess Mill Station I, Burgess Mill Station II, Hammarlee House, and River Point.

10.    Defendant BELLE HILL MANOR LP is a Maryland company with its principal place of business at 2661 Riva Road, Suite 320, Annapolis, Maryland 21401.  BELLE HILL MANOR LP owned Villages at Belle Hill  at the time it was designed and/or constructed, and currently owns the property.

11.    Defendant CHAPEL SPRINGS LP is a Maryland company with its principal place of business at 2661 Riva Road, Annapolis, Maryland 21401.  CHAPEL SPRINGS LP owned Chapel Springs Senior Apartments at the time it was designed and/or constructed, and currently owns the property.

12.    Defendant COUNTRY VIEW ELDERLY ASSOCIATES LP is a Maryland company with its principal place of business at 10220 Old Columbia Road, Suite M, Columbia, Maryland 21046.  COUNTRY VIEW ELDERLY ASSOCIATES LP owned Woodside Village Apartments at the time it was designed and/or constructed, and currently owns the property.

13.    Defendant GLENMORE ASSOCIATES LP is a Maryland company with its principal place of business at 2661 Riva Road, Suite 320, Annapolis, Maryland 21401. GLENMORE ASSOCIATES LP owned Overland Gardens Apartments at the time it was designed and/or constructed, and currently owns this property.

14.    Defendant HAMMARLEE HOUSE ASSOCIATES LP is a Maryland company with its principal place of business at 2661 Riva Road, Suite 320, Annapolis, Maryland 21401. HAMMARLEE HOUSE ASSOCIATES LP owned Hammarlee House at the time it was designed and/or constructed, and currently owns the property.

15.    Defendant HAMPSHIRE VILLAGE ASSOCIATES LP is a Maryland company with its principal place of business at 2661 Riva Road, Annapolis, Maryland 21401. HAMPSHIRE VILLAGE ASSOCIATES LP owned Hampshire Village at the time it was designed and/or constructed, and currently owns the property.

16.    Defendant OAK GROVE ASSOCIATES LP is a Maryland company with its principal place of business at 2661 Riva Road, Suite 320, Annapolis, Maryland 21401.  OAK GROVE ASSOCIATES LP owned River Point at the time it was designed and/or constructed, and currently owns the property.

17.    Defendant PIN OAK ELDERLY ASSCOCIATES LP is a Maryland company with its principal place of business at 10220 Old Columbia Road, Suite M, Columbia, Maryland 21046.  PIN OAK ELDERLY ASSCOCIATES LP owned Pin Oak Village Apartments at the time it was designed and/or constructed, and currently owns the property.

18.    Defendant RAINIER MANOR 2 LP is a Maryland company with its principal place of business at 2661 Riva Road, Suite 320, Annapolis, Maryland 21401.  RAINIER MANOR 2 LP owned Rainier Manor Phase II at the time it was designed and/or constructed, and currently owns the property.

19.    Defendant RANDOLPH VILLAGE ASSOCIATES LP is a Maryland company with its principal place of business at 2661 Riva Road, Annapolis, Maryland 21401. RANDOLPH VILLAGE ASSOCIATES LP owned Randolph Village Apartments at the time it was designed and/or constructed, and currently owns the property.

20.    Defendant WINDSOR ELDERLY ASSOCIATES LP is a Maryland company with its principal place of business at 2661 Riva Road, Suite 320, Annapolis, Maryland 21401.

WINDSOR ELDERLY ASSOCIATES LP owned Windsor Crossing Senior Apartments at the time it was designed and/or constructed, and currently owns the property.

21.    Defendant WINDSOR FAMILY ASSOCIATES LP is a Maryland company with its principal place of business at 2661 Riva Road, Suite 320, Annapolis, Maryland 21401. WINDSOR FAMILY ASSOCIATES LP owned Windsor Crossing Family Apartments at the time it was designed and/or constructed, and currently owns the property.

**RULE 19 DEFENDANTS**

22.    AVANATH VISTA LAKES, LLC, with its principal place of business at 1920 Main Street, Suite 150, Irvine, California 92614, is the current owner of Vistas at Lake Largo, and is named as a necessary party under Fed. R. Civ. P. 19 in whose absence complete relief cannot be afforded to the United States.

23.    AVANATH LARGO CENTER, LLC, with its principal place of business at 1920 Main Street, Suite 150, Irvine, California 92614, is the current owner of Largo Center Apartments, renamed Acclaim at Lake Largo, and is named as a necessary party under Fed. R. Civ. P. 19 in whose absence complete relief cannot be afforded to the United States.

24. CDT SP HENSON CREEK LLC, with its principal place of business at 5403 West Gray Street, Tampa, Florida 33609, is the current owner of Henson Creek Manor I Apartments and Henson Creek Manor II Apartments, renamed Woodland Creek Apartments, and is named as a necessary party under Fed. R. Civ. P. 19 in whose absence complete relief cannot be afforded to the United States.

25.    HOWARD COUNTY HOUSING COMMISSION (hereinafter "HCHC"), with its principal place of business at 9770 Patuxent Woods Drive, Columbia, Maryland 21046, is the current owner of Burgess Mill Station II, and is named as a necessary party under Fed. R. Civ. P. 19 in whose absence complete relief cannot be afforded to the United States.

26.    MILLTOWNE ASSOCIATES, LP, with its principal place of business at 6751 Columbia Gateway Drive, 3rd Floor, Columbia, Maryland 21046, is the current owner of Burgess Mill Station I, and is named as a necessary party under Fed. R. Civ. P. 19 in whose absence complete relief cannot be afforded to the United States.

## OVERVIEW OF SUBJECT PROPERTIES

27.    The Subject Properties serve families with children, seniors, and persons with disabilities, including low-income residents.

28.    The Subject Properties, with the exception of Burgess Mill Station II, were built using federal Low-Income Housing Tax Credits ("LIHTCs").  LIHTCs assist developers with financing affordable multifamily housing serving the lower-income population as well as elderly persons and persons with disabilities.

29.    To remain eligible for LIHTCs through the Maryland Department of Housing and Community Development, the Defendants are required to adhere to the accessibility requirements of the FHA, the ADA, and the ADA Standards.

30.    The Subject Properties, with the exception of Hampshire Village, Villages at Belle Hill, River Point, and Burgess Mills Station II, were built using funds from the HOME Investment Partnerships Program ("HOME funds"), 42 U.S.C. §§ 12701 *et al.*, administered through the Department of Housing and Urban Development.

31.    To be eligible to receive HOME funds, the Defendants are required to adhere to the accessibility requirements of the FHA, the ADA, and the ADA Standards.

## THE SUBJECT PROPERTIES

32.    **Burgess Mill Station I** is a multifamily property located at 3050 Milltowne Drive, Ellicott City, MD 21043.  The development consists of a garden-style property that includes

three-story and four-story apartment buildings with ground-floor units.  The development has 198 total dwelling units, of which 53 are covered dwelling units, common-use areas and amenities, a leasing office, and restrooms open to prospective residents and members of the public.

33.     **Burgess Mill Station II** is a multifamily property located at 3050 Milltowne Drive, Ellicott City, MD 21043.  The development is a garden-style property that includes four three-story buildings with 53 total units, of which 18 are covered dwelling units.  This development shares a leasing office and public restrooms with Burgess Mill Station I.

34.     **Chapel Springs Senior Apartments** is a multifamily property located at 9630 Dietz Place in Perry Hall, MD 21158.  The development consists of an elevator building with 127 covered dwelling units, common-use areas and amenities, a leasing office, and restrooms open to prospective residents and members of the public.

35.     **Hammarlee House Apartments** is a senior apartment building located at 20 Hammarlee Road, Glen Burnie, MD 21060.  The development consists of one three-story residential elevator building with 55 covered dwelling units, common-use areas and amenities, a leasing office, and restrooms open to prospective residents and members of the public.

36.     **Hampshire Village** is a senior multifamily apartment building located at 3210 Norbeck Road, Silver Spring, MD 20906.  The development consists of a three-story elevator building with 111 covered dwelling units, common-use areas and amenities, a leasing office, and restrooms open to prospective residents and members of the public.

37.     **Henson Creek Manor I Apartments and Henson Creek Manor II Apartments, renamed Woodland Creek Apartments,** is a multifamily property located at 5320 Haras Place, Fort Washington, MD 20744.  The development consists of fifteen three-story garden-style

residential buildings, with 71 covered dwelling units, common-use areas and amenities, a leasing office, and restrooms open to prospective residents and members of the public.

38.  **Largo Center Apartments, renamed the Acclaim at Lake Largo,** is a multifamily apartment building located at 520 Largo Center Drive, Largo, MD 20774.  The development consists of two five-story elevator buildings with 100 covered dwelling units, common-use areas and amenities, a leasing office, and restrooms open to prospective residents and members of the public.

39.  **Overland Gardens** is a multifamily apartment building located at 3101 75th Avenue, Landover, MD 20785.  The development consists of 29 three-and-four-story garden-style residential buildings, each with one to three ground-floor units with separate entrances off a hallway and/or building lobby.  There are 409 total units, of which 93 are covered dwelling units, common-use areas and amenities, a leasing office, and restrooms open to prospective residents and members of the public.

40.  **Pin Oak Village** is a senior multifamily apartment building located at 16010 Excalibur Road, Bowie, MD 20716.  The development consists of one four-story residential building with elevators, 220 covered dwelling units, common-use areas and amenities, a leasing office, and restrooms open to prospective residents and members of the public.

41.  **Rainier Manor Phase II** is a senior apartment building located at 3201 Buchanan Street, Mt. Rainier, MD 20712.  The development consists of one four-story residential building with an elevator.  There are 57 covered dwelling units, common-use areas and amenities, a leasing office, and restrooms open to prospective residents and members of the public.

42.  **Randolph Village Senior Apartments** is a senior multifamily apartment building located at 531 Randolph Road, Silver Spring, MD 20904.  The development consists of a three-

story elevator building with 130 covered dwelling units, common-use areas and amenities, a leasing office, and restrooms open to prospective residents and members of the public.

43.     **River Point Apartments** is a multifamily property located at 1800 Grove Manor Drive, Essex, MD 21221.  The development consists of one elevator building with 120 covered dwelling units, common-use areas and amenities, a leasing office, and restrooms open to prospective residents and members of the public.

44.     **Villages at Belle Hill** is a multifamily property located at 200 Clear Blossom Drive, Elkton, MD 21921.  The development is a garden-style property consisting of eight buildings with 96 total units, of which 56 are covered dwelling units, common-use areas and amenities, a leasing office and restrooms open to prospective residents and members of the public.

45.     **Vistas at Lake Largo** is a multifamily property located at 500 Harry S. Truman Drive, Upper Marlboro, MD 20774.  The development consists of one building with an elevator that contains 110 covered dwellings, common-use areas and amenities, a leasing office, and restrooms open to prospective residents and members of the public.

46.     **Windsor Crossing Family Apartments** is a multifamily apartment building located at 3000 Victory Lane, Suitland, MD 20746.  The development consists of eight three- and four-story garden-style residential buildings, each with three or four ground-floor units with separate entrances off a hallway and/or building lobby.  There are 128 total units, of which 22 are covered dwelling units.  There are common-use areas and amenities, a leasing office, and restrooms open to prospective residents and members of the public.

47.     **Windsor Crossing Senior Apartments** is a senior housing apartment building located at 5000 Lydianna Lane, Suitland, MD 20746.  The development consists of a U-shaped building serviced by an elevator with 125 covered dwelling units, common-use areas and

amenities, a leasing office, and restrooms open to prospective residents and members of the public.

48.   **Woodside Village Apartments** is a senior multifamily property located at 6801 Bock Road, Fort Washington, MD 20744.  The development consists of an elevator building with 200 covered dwelling units, common-use areas and amenities, a leasing office, and restrooms open to prospective residents and members of the public.

## FACTUAL ALLEGATIONS

49.   The Subject Properties were designed and constructed for first occupancy after March 13, 1991.

50.   The Subject Properties are "dwellings" within the meaning of 42 U.S.C. § 3602(b).

51.   The Subject Properties contain "covered multifamily dwellings" within the meaning of 42 U.S.C. § 3604(f)(7), and are subject to the accessibility requirements of 42 U.S.C. § 3604(f)(3)(C).

52.   The Subject Properties have one or more of the following inaccessible conditions and features that do not meet the requirements of 42 U.S.C. § 3604(f)(3)(C)(i) and (ii):

      a.    the public use and common-use portions of the dwellings are not readily accessible to and usable by persons with disabilities;

      b.    the doors are not all designed to allow passage into and within the premises within such dwellings, and not all are sufficiently wide to allow passage by persons with disabilities.

53.   The Subject Properties have dwelling units that do not contain one or more of the following features of adaptive design as required by 42 U.S.C. § 3604(f)(3)(C)(iii):

      a.    accessible routes into and through the dwellings;

     b.     light switches, electrical outlets, thermostats, and other environmental controls in accessible locations;

     c.     usable kitchens and restrooms such that an individual in a wheelchair can maneuver about the space.

54. The leasing offices, public restrooms, and other public spaces at the Subject Properties are places of "public accommodation" within the meaning of the ADA, 42 U.S.C. § 12181(7)(E) and 28 C.F.R. § 36.104.

55. The leasing offices, public restrooms, and other public spaces at the Subject Properties were designed and constructed for first occupancy after January 26, 1993.

56. The leasing offices, public restrooms, and other public spaces at the Subject Properties are required to meet the accessibility requirements of the ADA Standards.

57. The leasing offices, public restrooms, and other public spaces at the Subject Properties are not designed and constructed so that they are readily accessible to and usable by individuals with disabilities, as required by the Americans with Disabilities Act, 42 U.S.C. § 12183(a)(1).  These spaces fail to comply with the ADA Standards.

58. The following is an illustrative, but not exhaustive, list of inaccessible conditions and features at the Subject Properties that were created and caused by the Defendants' failure to design and construct them in compliance with the requirements of the FHA, the ADA, and the ADA Standards.

**Burgess Mill Station I**

59. The inaccessible conditions and features caused by one or more Defendants at **Burgess Mill Station I** include, but are not limited to: (a) no accessible route through the complex, including steps that hinder access to five ground-floor dwelling units and a set of

mailboxes, excessive cross slopes, and portions of curb ramps that have excessive running slopes; (b) access aisles in garages that are blocked by a column; (c) access to a dumpster that is hindered by a curb without a curb ramp; (d) excessive running slopes at landings outside dwelling unit entrances; (e) a threshold that is too high at the leasing office; (f) mailboxes that are too high for wheelchair users to reach; (g) kitchens with uninsulated pipes and garbage disposals preventing a forward approach and insufficient maneuvering space; and (h) bathrooms with insufficient clear floor space beyond the swing of the bathroom doors and insufficient clear floor space to allow persons who use wheelchairs to adequately maneuver toward or use the tub and sink.

**Burgess Mill Station II**

60.    The inaccessible conditions and features caused by one or more Defendants at **Burgess Mill Station II** include, but are not limited to: (a) no accessible route through the complex, including excessive cross slopes and portions of curb ramps with excessive running slopes; (b) door thresholds at the entrances of residential buildings that are too high; (c) operating hardware on the door to the tot lot that is mounted too high and requires grasping or pinching; (d) electrical outlets in kitchens that are too high for wheelchair users to reach; and (e) bathrooms with insufficient clear floor space outside the door swing and lacking pipe insulation under the sinks.

**Chapel Springs Senior Apartments**

61.    The inaccessible conditions and features caused by one or more Defendants at **Chapel Springs** include, but are not limited to: (a) kitchens with insufficient clear floor space between the refrigerator and opposing countertops; and (b) bathrooms with insufficient clear floor space outside of the swing of the bathroom doors.

**Hammarlee House Apartments**

62.   The inaccessible conditions and features caused by one or more Defendants at **Hammarlee House Apartments** include, but are not limited to: (a) a kitchen in the multi-purpose room with a counter top that is too high and controls for the range hood that are too high for wheelchairs users to reach; (b) restrooms with insufficient turning space and knee clearance under the sink; and (c) bathrooms in units with insufficient clear floor space to allow persons who use wheelchairs to adequately maneuver toward or use the sink and toilet.

**Hampshire Village**

63.   The inaccessible conditions and features caused by one or more Defendants at **Hampshire Village** include, but are not limited to: (a) no accessible route through the complex, including excessive cross slopes and excessive running slopes at curb ramps; (b) parking spaces with overly narrow access aisles; (c) inaccessible seating at tables in several common and public areas; (d) multiple objects excessively protruding into the circulation path in the common areas; (e) insufficient maneuvering space at common area doors; (f) kitchen entrance areas that are too narrow, insufficient knee space under kitchen sinks, insufficient width between counters, and insufficient maneuvering space; and (g) bathrooms with insufficient clear floor space to allow persons who use wheelchairs to adequately maneuver toward or use the sink.

**Henson Creek Manor I Apartments and Henson Creek Manor II Apartments, renamed Woodland Creek Apartments**

64.   The inaccessible conditions and features caused by one or more Defendants at **Henson Creek Manor I Apartments** include, but are not limited to: (a) no accessible route through the complex due to excessive cross slopes and the lack of sidewalk connections within the property from the units to the common areas; (b) excessive level changes at the access openings to the community dumpsters; (c) door thresholds that are too high at the entrances of

residential buildings; (d) ground-floor unit entrances with knob hardware that requires grasping, turning, and/or twisting; (e) bathrooms with insufficient clear floor space outside the swing of the doors, and insufficient clear floor space to allow persons who use wheelchairs to adequately maneuver toward or use the sink; and (f) kitchens with insufficient clear floor space to allow persons who use wheelchairs to adequately maneuver toward or use the sink.

65.   The inaccessible conditions and features caused by one or more Defendants at **Henson Creek Manor II Apartments** include, but are not limited to: (a) no accessible route from the property to the public street due to excessive slopes, excessive cross slopes at in-line curb ramps, and the lack of sidewalk connections within the property between the units and the common areas; (b) overly narrow access aisles at the van-accessible parking spaces near the leasing office; (c) excessively high level changes at the access openings to the community dumpsters; (d) excessive running slopes on both sides of the pool gate and a lack of handrails; (e) high door thresholds at the entrances of residential buildings; (f) unit entrances with knob hardware that requires grasping, turning, and/or twisting; (g) kitchens with insufficient clearance between the refrigerator and opposing countertops and appliances; and (h) bathrooms with insufficient clear floor space outside the door swing and insufficient clear floor space to allow persons who use wheelchairs to adequately maneuver toward or use the sink.

**Largo Center Apartments, renamed Acclaim at Lake Largo**

66.   The inaccessible conditions and features caused by one or more Defendants at **Largo Center Apartments, renamed Acclaim at Lake Largo,** include, but are not limited to: a) no accessible route through the complex, including no accessible route provided from the property to the public street and excessive cross slopes at all in-line curb cuts; (b) signs posted too low at several accessible parking spaces; (c) multiple steps on one side of the walkway

16

leading to the leasing office and excessive cross slopes on the other side; (d) excessive cross slopes leading to the pool gate; and (e) bathrooms with insufficient clear floor space outside the door swing and insufficient clear floor space at the sinks.

**Overland Gardens**

67.    The inaccessible conditions and features caused by one or more Defendants at **Overland Gardens** include, but are not limited to: a) no accessible route from the residential buildings to the community center, including excessive cross slopes, unpaved grassy areas, and excessively steep curb ramps; (b) no accessible entrances to residential buildings, including steps that hinder access to the ground-floor units; (c) garages that are too narrow for a wheelchair user to adequately maneuver about the space; (d) lack of signage at the designated accessible parking spaces near the leasing office and a lack of access aisles at certain designated accessible parking spaces; (e) a rent drop box that is inaccessible due to steps; (f) mailboxes in the interior of residential buildings that are too high for wheelchair users to reach; (g) excessively narrow doors into walk-in closets; (h) kitchens with uninsulated pipes under the sinks, insufficient knee space under the sinks, and insufficient maneuvering space; and (i) bathrooms with insufficient clear floor space to allow persons who use wheelchairs to adequately maneuver toward or use the sink or bathtub.

**Pin Oak Village**

68.    The inaccessible conditions and features caused by one or more Defendants at **Pin Oak Village** include, but are not limited to: (a) no accessible route through the complex, including excessive cross slopes, running slopes, and curb ramps with excessive running slopes; (b) excessive cross slopes at parking spaces and access aisles designated as accessible; (c) a step at the entrance to the gazebo; (d) signage identifying the leasing office that does not have

required accessibility features; (e) no accessible seating at the tables in the lounges and on the patios; (f) doors to the leasing office, toilet rooms, exercise room, trash rooms, laundry rooms, health room, theater, community rooms and library that require too much force to open; (g) public restrooms with insufficient maneuvering space at the men's restroom door, and toilets that are too close to the sidewall; (h) doors in the common areas whose thresholds are too steep and not beveled; (i) electrical outlets in kitchens and bathrooms that are too high for wheelchair users to reach; (j) kitchens with insufficient knee space under the sink and insufficient maneuvering space; and (k) bathrooms with insufficient knee space under the sinks and insufficient clear floor space to allow persons who use wheelchairs to adequately maneuver toward or use the sink and showers.

**Rainier Manor Phase II**

69.    The inaccessible conditions and features caused by one or more Defendants at **Rainier Manor Phase II** include, but are not limited to: (a) a kitchen in the multi-purpose room with a counter top that is too high and controls for the range hood that are too high for wheelchair users to reach; (b) excessively high countertop in the wellness center; (c) restrooms lacking pipe insulation under the sinks; (d) kitchens with insufficient maneuvering space and insufficient clearance between the counter tops and opposite walls; and (e) bathrooms with insufficient clear floor space at the sinks.

**Randolph Village Apartments**

70.    The inaccessible conditions and features caused by one or more Defendants at **Randolph Village Apartments** include, but are not limited to: (a) no accessible route through the complex, including excessive cross slopes along the exterior route and at the curb ramps; (b) inaccessible parking including excessive cross slopes at the access aisles; (c) inaccessibly high

counter in the leasing office; (d) inaccessible seating at the tables on the patio, in the multi-purpose room and in the library; (e) insufficient knee space at the drinking fountain; (d) trash chute doors that require too much force to open; (f) controls and storage devices in several common areas that are mounted too high; (g) insufficient maneuvering space at the entrances to the restrooms, library, and health room; (h) insufficient clear floor space at the sink in the men's restroom; (i) signage identifying the restrooms mounted too low to be accessible; (j) electrical outlets in kitchens and bathrooms that are too high or too close to a corner for wheelchair users to reach; (k) kitchens with insufficient clear floor space to allow persons who use wheelchairs to turn around and to adequately maneuver toward or to reach and use appliances and sinks; and (l) bathrooms with insufficient clear floor space to allow persons who use wheelchairs to adequately maneuver toward or use the sinks, showers, and toilets.

**River Point Apartments**

71.    The inaccessible conditions and features caused by one or more Defendants at **River Point Apartments** include, but are not limited to: (a) no accessible route from the property to the public street; (b) restrooms with inaccessible features, including mounting of the toilet flush on the incorrect side, and control and emergency call buttons that are too high for wheelchair users to reach; (c) coat closet doors that are too narrow to be accessible; and (d) kitchens with insufficient clear floor space between the refrigerator and opposing countertops and appliances, and insufficient clear floor space at the kitchen sinks.

**Villages at Belle Hill**

72.    The inaccessible conditions and features caused by one or more Defendants at **Villages at Belle Hill**  include, but are not limited to: (a) no accessible route from the property to

the public street; (b) no accessible route to the dumpster; and (c) kitchens with insufficient clear

floor space and insufficient turning space between the refrigerator and the opposing counter top.

**Vistas at Lake Largo**

73.    The inaccessible conditions and features caused by one or more Defendants at

**Vistas at Lake Largo** include, but are not limited to: (a) no accessible route from the property to

the private street; (b) kitchens with insufficient turning space and insufficient clear floor space at

kitchen sinks; and (c) bathrooms with insufficient clear floor space to allow persons who use

wheelchairs to adequately maneuver toward or use the sink and insufficient clear floor space

outside the swing of the bathroom door.

**Windsor Crossing Family Apartments**

74.    The inaccessible conditions and features caused by one or more Defendants at

**Windsor Crossing Family Apartments** include, but are not limited to: (a) no accessible route

through the property, including excessive cross slopes along the exterior route leading from the

residential buildings to the community center, excessive slopes covering a 15-foot portion of the

exterior route without ramp features like handrails and landings, and steep curb ramps at the

community building; (b) lack of a van accessible parking space at the rental office and lack of

signage at designated accessible parking spaces; (c) steps that hinder access to the Gazebo; (d)

lack of accessible seating at tables in the community lounge; (e) protruding objects that interfere

with the circulation path in the community center; (f) doors to the leasing office, community

room, computer room and exercise rooms that have knob hardware that requires grasping,

turning, and/or twisting; (g) public restrooms with grab bars that are not installed in the correct

locations, insufficient maneuvering space at the entrances, and restrooms with insufficient clear

floor space to allow persons who use wheelchairs to adequately maneuver toward or use the

toilets; (h) insufficient maneuvering space at residential entrances; (i) mailboxes that are too high for wheelchair users to reach; (j) thermostats in the units that are too high for wheelchair users to reach; (k) kitchens with insufficient knee and toe space at kitchen sinks and insufficient maneuvering space; and (l) bathrooms with insufficient knee and toe space at the sinks and insufficient clear floor space to allow persons who use wheelchairs to adequately maneuver toward or use the toilet.

**Windsor Crossing Senior Apartments**

75.   The inaccessible conditions and features caused by one or more Defendants at **Windsor Crossing Senior Apartments** include, but are not limited to: (a) no accessible route through the complex, including excessive cross slopes at in-line curb ramps; (b) lack of an access aisle at an accessible parking space near the main entrance to the building; and (c) bathrooms with insufficient clear floor to allow persons who use wheelchairs to adequately maneuver toward or use the sink and insufficient clear floor space outside the door swing.

**Woodside Village Apartments**

76.   The inaccessible conditions and features caused by one or more Defendants at **Woodside Village Apartments** include, but are not limited to: (a) no accessible route through the complex due to a lack of any sidewalk connection to the playground; (b) kitchens with insufficient maneuvering space and insufficient clear floor space at the kitchen sinks; and (c) bathrooms that have insufficient clear floor space outside the door swing and insufficient clear floor space at sinks.

## COUNT I: VIOLATION OF THE FAIR HOUSING ACT

77.   The United States re-alleges and incorporates by reference the allegations set forth above.

78.     The conduct of the Defendants described above violates 42 U.S.C. §§ 3604(f)(1), (f)(2), and (f)(3)(C).

79.     The Defendants violated 42 U.S.C. § 3604(f)(3)(C), and 24 C.F.R. § 100.205(c), by failing to design and construct covered multifamily dwellings in such a manner that:

    a.  the public use and common-use portions of the dwellings are readily accessible to and usable by persons with disabilities;

    b.  all the doors designed to allow passage into and within all premises within such dwellings are sufficiently wide to allow passage by persons with disabilities; and

    c.  all premises within such dwellings contain the following features of adaptive design:

        i.    an accessible route into and through the dwelling;

        ii.   light switches, electrical outlets, thermostats, and other environmental controls in accessible locations; and

        iii.  usable kitchens and restrooms, such that an individual using a wheelchair can maneuver about the space.

80.     The Defendants, through the actions and conduct referred to in the preceding paragraphs, have:

    a.  discriminated in the sale or rental of, or otherwise made unavailable or denied, dwellings to buyers or renters because of disability, in violation of 42 U.S.C. § 3604(f)(1) and 24 C.F.R. § 100.202(a);

    b.  discriminated against persons in the terms, conditions, or privileges of the sale or rental of a dwelling, or in the provision of services or facilities in connection

with a dwelling, because of disability, in violation of 42 U.S.C. § 3604(f)(2) and
24 C.F.R. § 100.202(b); and

c.  failed to design and construct dwellings in compliance with the accessibility and
adaptability features mandated by 42 U.S.C. § 3604(f)(3)(C) and 24 C.F.R. §
100.205.

81.  To the extent a State or unit of general local government has incorporated into its
laws the requirements set forth in 42 U.S.C. § 3604(f)(3)(C), the above properties have
deficiencies that did not comply with such requirements at the time they were designed and
constructed.

82.  The conduct of the Defendants described above constitutes:

a.  a pattern or practice of resistance to the full enjoyment of rights granted by the
FHA, 42 U.S.C. §§ 3601-3619, within the meaning of 42 U.S.C. § 3614(a); and

b.  a denial to a group of persons of rights granted by the FHA, 42 U.S.C. §§ 3601-
3619, which denial raises an issue of general public importance, within the
meaning of 42 U.S.C. § 3614(a).

83.  Persons who have been the victims of the Defendants' discriminatory housing
practices are "aggrieved persons" under 42 U.S.C. § 3602(i), and may have suffered injuries
because of the conduct described above.

84.  The conduct of the Defendants described above was intentional, willful, and taken
in disregard of the rights of others.

85.  The Defendants' pattern or practice of failing to design and construct dwellings in
compliance with the FHA, as alleged in this complaint, may extend to other existing multifamily

properties and, absent injunctive relief, to other multifamily properties that may be designed and constructed in the future.

**COUNT II: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**

86.    The United States re-alleges and incorporates by reference the allegations set forth above.

87.    The Defendants have failed to design and construct the leasing offices and/or other places of public accommodation at the Subject Properties in a manner required by 42 U.S.C. §12183(a)(1), 28 C.F.R. §§ 36.401 and 36.406, and 28 C.F.R. Part 36, Appendix A.

88.    The conduct of the Defendants described above constitutes:

 a.   a pattern or practice of discrimination within the meaning of 42 U.S.C. § 12188(b)(1)(B)(i) and 28 C.F.R. § 36.503(a); and

 b.   unlawful discrimination that raises an issue of general public importance within the meaning of 42 U.S.C. § 12188(b)(1)(B)(ii) and 28 C.F.R. § 36.503(b).

89.    Persons who may have been victims of the Defendants' discriminatory conduct are "aggrieved" as defined in 42 U.S.C. § 12188(b)(2)(B), and may have suffered injuries because of the conduct described above.

90.    The conduct of the Defendants described above was intentional, willful, and taken in disregard of the rights of others.

91.    The Defendants' pattern or practice of failing to design and construct dwellings, public and common-use areas, and associated places of public accommodation in compliance with the ADA, as alleged in this complaint, may extend to other existing multifamily properties and, absent injunctive relief, to other multifamily properties that may be designed and constructed by one or more of them in the future.

**PRAYER FOR RELIEF**

**WHEREFORE**, the United States prays that the Court enter an order that:

    a.   Declares that the conduct of the Defendants, as alleged in this complaint, violates the Fair Housing Act;

    b.   Declares that the conduct of the Defendants, as alleged in this complaint, violates the Americans with Disabilities Act;

    c.   Enjoins the Defendants, their officers, employees, agents, successors, and all other persons in active concert or participation with any of them from:

        i.   Failing or refusing to conduct a survey of the dwelling units and public and common-use areas at the above properties and other covered multifamily properties designed and/or constructed by the Defendants to determine all inaccessible features that exist in violation of the FHA;

        ii.   Failing or refusing to bring the dwelling units and public and common-use areas at the above properties and other covered multifamily properties designed and/or constructed by the Defendants into compliance with the FHA;

        iii.   Failing or refusing to conduct compliance surveys at all covered multifamily properties designed and/or constructed by the Defendants to determine whether retrofits made comply with the FHA;

        iv.   Designing or constructing any covered multifamily dwellings and public and common-use areas in the future that do not comply with the FHA; and

25

     v.  Failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, the victims of the Defendants' unlawful practices to the position they would have been in but for the discriminatory conduct;

d.  Enjoins the Defendants, their officers, employees, agents, successors, and all other persons in active concert or participation with any of them from:

     i.  Failing or refusing to conduct a survey of the public accommodations, including leasing offices, restrooms for use by prospective renters or others, and other public use areas, at covered multifamily properties of which each defendant was or is involved in the design or construction, to determine all inaccessible features that exist in violation of the ADA and ADA Standards;

     ii.  Failing or refusing to bring the public accommodations, including leasing offices, restrooms for use by prospective renters or others, and other public use areas, at covered multifamily properties of which each defendant was or is involved in the design or construction, into full compliance with the ADA and the ADA Standards;

     iii.  Failing or refusing to conduct ADA compliance surveys to determine whether retrofits made comply with the ADA and the ADA Standards;

     iv.  Designing or constructing any public accommodations in the future that do not comply with the ADA and the ADA Standards; and

      v.  Failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, the victims of the Defendants' unlawful practices to the position they would have been in but for the discriminatory conduct.

e.  Enjoins the Defendants and the Rule 19 Defendants from engaging in conduct that impedes any retrofits required to bring the Subject Properties, including covered dwelling units and public and common-use areas, into compliance with the FHA and to bring the public accommodations areas into compliance with the ADA and the ADA Standards in a prompt and efficient manner while minimizing inconvenience to the residents and visitors at the properties; and

f.  Awards monetary damages under 42 U.S.C. § 3614(d)(1)(B) and 42 U.S.C. § 12188(b)(2)(B) to all persons harmed by the Defendants' discriminatory practices.

g.  Assesses a civil penalty against each Defendant who participated in the design and construction of a covered multifamily property within the past five years, in an amount authorized by 42 U.S.C. §§ 3614(d)(1)(C), 12188(b)(2)(C), and 28 C.F.R. § 85.3(b)(3) to vindicate the public interest.

The United States further prays for such additional relief as the interests of justice may require.

Dated: September 27, 2022

Respectfully submitted,

MERRICK B. GARLAND
Attorney General

___/s/_____
KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

EREK L. BARRON
United States Attorney
District of Maryland

___/s/_____
SAMEENA SHINA MAJEED
Chief, Housing and Civil Enforcement Section

_____
KIMBERLY S. PHILLIPS
Bar No. 811611
Assistant United States Attorney
36 S. Charles Street 4th Floor
Baltimore, Maryland 21201
Phone: (410) 209-4900
E-mail: Kimberly.Phillips@usdoj.gov

___/s/_____
MICHAEL S. MAURER
Deputy Chief
BETH PEPPER
JENNIFER MCALLISTER
Trial Attorneys
Housing and Civil Enforcement Section
Civil Rights Division
U.S. Department of Justice
4 Constitution Square
150 M Street, N.E., Room 6.1423
Washington, DC 20002
Phone: (202) 305-0916
Fax: (202) 514-1116
E-mail: Beth.Pepper@usdoj.gov
E-mail: Jennifer.Mcallister@usdoj.gov

*Attorneys for Plaintiff*
*United States of America*