IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.22-cv-02448-JMC |
| | ) | |
| HUMPHREY-STAVROU ASSOCIATES INC., | ) | |
| R & S LLC, | ) | |
| STAVROU ASSOCIATES INC., | ) | |
| BELLE HILL MANOR LP, | ) | |
| CHAPEL SPRINGS LP, | ) | |
| COUNTRY VIEW ELDERLY ASSOCIATES LP, | ) | |
| GLENMORE ASSOCIATES LP, | ) | |
| HAMMARLEE HOUSE ASSOCIATES LP, | ) | |
| HAMPSHIRE VILLAGE ASSOCIATES LP, | ) | |
| OAK GROVE ASSOCIATES LP, | ) | |
| PIN OAK ELDERLY ASSOCIATES LP, | ) | |
| RAINIER MANOR 2 LP, | ) | |
| RANDOLPH VILLAGE ASSOCIATES LP, | ) | |
| WINDSOR ELDERLY ASSOCIATES LP, and | ) | |
| WINDSOR FAMILY ASSOCIATES LP, | ) | |
| | ) | |
| Defendants, | ) | |
| and | ) | |
| | ) | |
| AVANATH VISTA LAKES, LLC, | ) | |
| AVANATH LARGO CENTER, LLC, | ) | |
| CDT SP HENSON CREEK, LLC, | ) | |
| HOWARD COUNTY HOUSING COMMISSION, and | ) | |
| MILLTOWNE ASSOCIATES, LP, | ) | |
| | ) | |
| Rule 19 Defendants. | ) | |
| _____ | ) | |

**CONSENT ORDER AS TO STAVROU ASSOCIATES, INC. AND RELATED
<u>DEFENDANTS</u>**

## I.     Introduction

1.     This Consent Order ("Order") resolves the allegations in the United States'

Complaint, filed on September 27, 2022, to enforce provisions of the Fair Housing Act ("FHA"),

42 U.S.C. §§ 3601-3619, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181-12189, regarding these Defendants: (a)  Stavrou Associates, Inc. and R & S LLC ("Developer Defendants"), (b) Glenmore Associates LP, Windsor Family Associates LP, Windsor Elderly Associates LP, Rainier Manor 2 LP, Chapel Springs LP, Belle Hill Manor LP, Hammarlee House Associates LP, Oak Grove Associates LP, and Hampshire Village Associates LP ("Owner Defendants"), and (c) Milltowne Associates, LP and Howard County Housing Commission (collectively "Rule 19 Defendants").  In its Complaint, the United States alleges that the Developer Defendants and Owner Defendants (collectively "Defendants") engaged in a pattern or practice of discrimination against persons with disabilities and denied rights to a group of persons because of disability by failing to design and construct one or more covered multifamily dwellings in compliance with the FHA and the ADA.  The United States alleges, with regard to the Rule 19 Defendants, that Milltowne Associates, LP is the current owner of Burgess Mill Station I, and Howard County Housing Commission is the current owner of Burgess Mill Station II, and both are necessary parties under Fed. R. Civ. P. 19 in whose absence complete relief cannot be afforded to the United States with regard to the properties they own.[1]

2.      Defendants deny the allegations asserted in the Complaint, including but not limited to the allegation in the Complaint that any of the Subject Properties are not in compliance with the FHA, ADA, or any other applicable local, state, or federal code, rule, or regulation pertaining to accessibility (the "Accessibility Requirements"), and Defendants further deny any assertion that they intentionally or otherwise failed to comply with such Accessibility Requirements in their ownership, design, development, and/or construction of the Subject Properties.  The United States and Rule 19 Defendants acknowledge that this Consent Order

---

[1] Burgess Mill Station I and Burgess Mill Station II are also referred to in a short form as "Burgess Mill Station I and II" or "Burgess Mill I and II."

does not constitute, and should not be construed as, an admission of wrongdoing by Rule 19 Defendants.

## II.    COVERED PROPERTIES AND DEFENDANTS

3.    The following table identifies the Developer Defendants and Owner Defendants that participated in the design and construction of the covered multifamily properties at issue in this Order (collectively the "Subject Properties"):

| TABLE I | | | |
|---|---|---|---|
| | **SUBJECT PROPERTY** | **OWNER DEFENDANT** | **DEVELOPER DEFENDANT** |
| 1. | Overland Gardens Apartments | Glenmore Associates LP | R&S LLC |
| 2. | Windsor Crossing Apartments (Family) | Windsor Family Associates, LP | R&S LLC |
| 3. | Hampshire Village | Hampshire Village Associates, LP | R&S LLC |
| 4. | Windsor Crossings Senior Apartments | Windsor Elderly Associates, LP | R&S LLC |
| 5. | Rainier Manor Phase II Apartments | Rainier Manor 2 LP | R&S LLC |
| 6. | Hammarlee House Apartments | Hammarlee House Associates, LP | Stavrou Associates, Inc. |
| 7. | Villages at Belle Hill Apartments | Belle Hill Manor, LP | R&S LLC |
| 8. | River Point Apartments | Oak Grove Associates, LP | Stavrou Associates, Inc. |
| 9. | Chapel Springs Senior Apartments | Chapel Springs, LP | R&S LLC |
| 10. | Burgess Mill Station I and Burgess Mill Station II | | Stavrou Associates, Inc.[2] |

4.    Owner Defendants and Developer Defendants shall only be responsible for the

---

[2] The identification of only Stavrou Associates, Inc. ("SAI") as a developer for Burgess Mill Station I and II in this Consent Order does not constitute a determination by the United States, or an admission by SAI that SAI was the sole developer for these properties.  Nothing in this Consent Order affects the rights or claims that SAI, Milltowne Associates, LP, or the Howard County Housing Commission may have against one another arising from this Consent Order or the design/or construction of Burgess Mill Station I and II.

requirements in this Order assigned to each of them relating to their respective Subject Properties as set forth in Table I.  No Owner Defendant or Developer Defendant shall have any obligations under this Order relating to any other Subject Property which it did not design or construct, as indicated in Table I.   Each Defendant represents and warrants that it has the legal authority and financial capacity to perform and complete all the retrofits that are required at each Subject Property for which it bears responsibility, in accordance with the terms and timetables in this Order.

5.    The United States, Owner Defendants, and Developer Defendants shall be referred to collectively as the "Parties."

6.    For purposes of this Order, the United States, Defendants, and Rule 19 Defendants (as to their respective properties) agree that the Subject Properties are subject to the design and construction requirements of the FHA, 42 U.S.C. §§ 3604(f)(1), (f)(2), and (f)(3)(C), and the ADA, 42 U.S.C. § 12183(a)(1).

**A.  Applicable Requirements of the FHA and ADA**

7.    The FHA provides that, for residential buildings with an elevator consisting of four or more dwelling units, all units that are designed and constructed for first occupancy after March 13, 1991, are "covered multifamily dwellings" and must include features of adaptive design to make such units accessible to a person who has or develops a disability.  42 U.S.C. §§ 3604(f)(3)(C) and (f)(7)(A).

8.    The FHA provides that, for non-elevator residential buildings with four or more dwelling units, all ground-floor units that are designed and constructed for first occupancy after March 13, 1991, are "covered multifamily dwellings" and must include features of  adaptive design to make such units accessible to a person  who has or develops a disability.  42 U.S.C. §§

3604(f)(3)(C) and (f)(7)(B).

9.    The accessibility provisions of the FHA require that, for covered  multifamily

dwellings: (i) the public use and common-use portions of such dwellings are readily  accessible

to and usable by persons with a disability; (ii) all the doors designed to allow passage  into and

within all premises within such dwellings are sufficiently wide to allow passage by  persons with

a disability using wheelchairs; (iii) all premises within such dwellings contain the  following

features of adaptive design: (I) an accessible route into and through the dwelling; (II)  light

switches, electrical outlets, thermostats, and other environmental controls in accessible

locations; (III) reinforcements in bathroom walls to allow later installation of grab bars; and (IV)

usable kitchens and bathrooms such that an individual using a wheelchair can maneuver about

the space.   42 U.S.C. § 3604(f)(3)(C).

10.    For the purposes of this Order, the Parties and Rule 19 Defendants (as to their

respective properties) agree that the Subject Properties were designed and constructed for first

occupancy after March 13, 1991, and therefore  all the units in buildings with elevators and all

ground-floor units in non-elevator buildings at the Subject Properties are "covered multifamily

dwellings" within the meaning of the FHA, 42 U.S.C. § 3604 (f)(7)(A) and (B).  As such, those

units and the public and common-use areas must comply with the accessibility requirements of

the FHA.

11.    Both the ADA and the ADA Standards for Accessible Design, ADA Accessibility

Guidelines for Buildings and Facilities, 28 C.F.R. pt. 36, app. A ("ADA Standards"), which have

been issued by the U.S. Department of Justice to implement the design and construction

requirements of Title III of the ADA, require that all "public accommodations" designed  and

constructed for first occupancy after January 26, 1993, and the goods, services, facilities,

privileges, advantages, or accommodations of those public accommodations, be readily accessible to and usable by persons with disabilities in accordance with certain accessibility standards promulgated under that Act. 42 U.S.C. §§ 12182(a) and 12183(a)(1). Rental or sales offices, and the facilities and privileges provided at those offices, such as restrooms open to visitors and guests and public parking, are "public accommodations" under the ADA. 42 U.S.C. § 12181(7)(E).

12.    For the purposes of this Order, the Parties and Rule 19 Defendants (as to their respective properties) agree that the rental offices for the Subject Properties were designed and constructed for first occupancy after January 26, 1993, and, therefore, the rental offices and the facilities and privileges provided at those offices, such as restrooms and public parking, are required to be designed and constructed in accordance with the ADA and the ADA Standards.

**B.  Overview of the Subject Properties**

13.    The Subject Properties house families with children, seniors, and persons with disabilities, including low-income residents.

14.    The Subject Properties, with the exception of Burgess Mill Station II, were built using federal Low-Income Housing Tax Credits ("LIHTCs").

15.    The Subject Properties, with the exception of Hampshire Village, River Point, Villages at Belle Hill Apartments, and Burgess Mill Station II, were built using funds from the HOME Investment Partnerships Program ("HOME funds"), 42 U.S.C. §§ 12701 *et al.*

16.    To be eligible to receive HOME funds administered through the United States Department of Housing and Urban Development ("HUD"), the Defendants are required to adhere to the accessibility requirements of the FHA and the ADA.

C.  **Description of the Subject Properties**

17.      **Burgess Mill Station I** is a multifamily property located at 3050 Milltowne Drive, Ellicott City, MD 21043.  This development is a garden-style property that includes three-story and four-story apartment buildings with ground-floor units.  The development has 198 total dwelling units, of which 53 are covered dwelling units, and common-use areas and amenities. There is also a leasing office with restrooms open to prospective residents and members of the public.  This property was built for first occupancy on November 30, 2012.

18.      **Burgess Mill Station II** is a multifamily property located at 3580 Court House Drive (Building 1), 3585 Fels Lane (Building 2) and 3595 Fels Lane (Building 3), with a leasing office and mailing address at 3050 Milltowne Drive, Ellicott City, MD 21043.  This development is a garden-style property that includes three three-story buildings. There are 53 total units, of which 18 are covered dwelling units.  This development shares its leasing office and public restrooms with Burgess Mill Station I.  This property was built for first occupancy on September 1, 2019.

19.      **Chapel Springs Senior Apartments** is a senior multifamily property located at 9630 Dietz Place in Perry Hall, MD 21158.  The development consists of an elevator building with 127 covered dwelling units, common-use areas and amenities.  The development has a leasing office with restrooms open to prospective residents and members of the public.  This property was built for first occupancy on or about November 6, 2015.

20.      **Hammarlee House Apartments** is a senior apartment building located at 20 Hammarlee Road, Glen Burnie, MD 21060.  The development consists of one four-story residential building with an elevator.  There are 57 covered dwelling units, common-use areas and amenities.  There is also a leasing office with restrooms open to prospective residents and

members of the public.  This property was built for first occupancy on or about December 15, 2010.

21.    **Hampshire Village** is a senior multifamily apartment building located at 3210 Norbeck Road, Silver Spring, Maryland 20906.  This development consists of a three-story elevator building with 110 covered dwelling units, common-use areas and amenities.  The development has a leasing office with restrooms open to prospective residents and members of the public.  This property was built for first occupancy on or about December 22, 2003.

22.    **Overland Gardens Apartments** is a multifamily apartment building located at 3101 75th Avenue, Landover, MD 20785.  This development consists of 29 three-and-four-story garden-style residential buildings, each with one to three ground-floor units with separate entrances off of a hallway and/or building lobby.  There are 409 total units, of which 93 are covered dwelling units, common-use areas and amenities.  There is a leasing office with restrooms open to prospective residents and members of the public.  This property was built for first occupancy on or about July 2005.

23.    **Rainier Manor Phase II** is a senior apartment building located at 3201 Buchanan Street, Mt. Rainier, MD 20712.  The development consists of one four-story residential building with an elevator.  There are 57 covered dwelling units, common-use areas and amenities.  There is also a leasing office with restrooms open to prospective residents and members of the public.  This property was built for first occupancy on or about November 1, 2017.

24.    **River Point Apartments** is a multifamily property located at 1800 Grove Manor Drive in Essex, MD 21221.  The development consists of one elevator building with 120 covered dwelling units, common-use areas and amenities.  The development also has a leasing office with restrooms open to prospective residents and members of the public.  This property was built for

first occupancy on or about December 21, 2004.

25.    **Villages at Belle Hill** is a multifamily property located at 200 Clear Blossom Drive in Elkton, MD 21921.  The development consists of one four-story residential building with an elevator.  There are 57 covered dwelling units, common-use areas and amenities.  There is also a leasing office with restrooms open to prospective residents and members of the public. This property was built for first occupancy on or about November 19, 2013.

26.    **Windsor Crossing Family Apartments** is a multifamily apartment building located at 3000 Victory Lane, Suitland, Maryland 20746.  This development consists of eight, three-and four-story garden-style residential buildings, each with three or four ground-floor units with separate entrances off of a hallway and/or building lobby.  There are 128 units total, of which 22 are covered dwelling units, common-use areas and amenities.  There is a leasing office with restrooms open to prospective residents and members of the public.  This property was built for first occupancy on or about December 1, 2003.

27.    **Windsor Crossing Senior Apartments** is a senior housing apartment building located at 5000 Lydianna Lane, Suitland, MD 20746.  The development consists of a U-shaped building serviced by an elevator.  There are 125 covered dwelling units, common-use areas and amenities.  There is also a leasing office with restrooms for prospective residents and members of the public.  This property was built for first occupancy on or about December 1, 2003.

**D.  Consent of the Parties to this Order**

28.    The Developer Defendants and Owner Defendants agree to remedy the conditions at Subject Properties for which they are responsible (see Table I) that the United States alleges are not in compliance with the FHA and ADA, as set forth herein.  No Owner Defendant nor Developer Defendant shall have any obligation to remediate a Subject Property for which it is

not responsible, as indicated in Table I.

29.    The Parties and Rule 19 Defendants agree that this Court has jurisdiction over the subject matter of this case under 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 3614(a) and 12188(b)(1)(B).  The Parties and Rule 19 Defendants further agree that this controversy should be resolved without further proceedings and without an evidentiary hearing or a trial.

30.    As indicated by the signatures appearing below, the Parties and Rule 19 Defendants agree to the entry of this Order.

 **It is hereby ORDERED, ADJUDGED, and DECREED:**

### III.    General Injunction

31.    Defendants and each of their officers, employees, agents, successors and assigns, and all other persons in active concert or participation with them, are enjoined from discriminating on the basis of disability as prohibited by the FHA or the ADA.

32.    Defendants and each of their officers, employees, agents, successors and assigns, and all other persons in active concert or participation with them, are enjoined from preventing, hindering, or interfering with the retrofitting ordered herein or the implementation or completion of this Order.

33.    Defendants and each of their officers, employees, agents, successors and assigns, and all other persons in active concert or participation with them, are enjoined from unreasonably restricting access to the public and common-use areas and unit interiors of the Subject Properties which they own and/or over which they have control for the purpose of fulfilling the requirements and obligations of this Order, including, but not limited to, planning, evaluating, and performing any action required under this Order, bringing the public and common-use areas and the unit interiors into compliance with the FHA (*e.g.*, the FHA

Guidelines, ANSI A117.1-1986 or another HUD-recognized safe harbor) and the ADA and ADA Standards, and interviewing or meeting with residents or tenants to aid in the implementation or completion of this Order.

## IV.    Retrofits at Subject Properties

34.    As set forth herein and in its Complaint, the United States alleges that the Subject Properties do not meet the accessibility requirements of the FHA, the FHA Guidelines, the ADA, and the ADA Standards.  The Defendants deny all of these allegations; however, to address the United States' allegations, the Owner Defendants and Developer Defendants shall complete the actions and retrofits described in this section and in the Retrofit Plans set forth in Appendix A for the Subject Properties for which they are responsible, as indicated in Table I.[3]  No Owner Defendant nor Developer Defendant shall be responsible for completing actions and retrofits at a Subject Property for which it is not responsible, as set forth in Table I.

35.    Defendant SAI and Rule 19 Defendants have entered into a written Cooperation Agreement to ensure that the retrofits to Burgess Mill Station I and Burgess Mill Station II are made in accordance with the Remediation Protocol agreed to by the Parties, and the Retrofit Plans agreed to by the Parties set forth in Appendix A, and that Rule 19 Defendants carry out other specific obligations to fulfill the terms of this Consent Order regarding their properties. The entry of this Consent Order does not impose any affirmative obligations to fulfill its terms

---

[3] The Parties recognize that the construction of certain properties was subsidized by Low Income Housing Tax Credits.  Such properties are subject to the applicable Section 42 regulations; investor, lender, or third party guarantees and contract requirements; related land use covenants or requirements; or the associated Land Use Restriction Agreement.  While the Parties do not anticipate that these regulations will impact any retrofits required by this Order, in the event it is discovered that a retrofit may negatively affect the tax credit status of a property or unit, the parties will meet and confer.  If it is determined that the retrofit would impact tax-credit status, the parties will, in good faith, seek alternative accessibility modifications to reasonably mitigate the circumstance or other steps for reasonable accommodation or other accessibility remedies in light of the overall objectives of the FHA and ADA.

on the Rule 19 Defendants beyond those specifically described in paragraphs 36-38, 54, 79-83 and 86, below.

36.    The Rule 19 Defendants and each of their officers, employees, agents, successors and assigns shall cooperate with the Parties to carry out all terms in this Consent Order that apply to their properties, and shall refrain from engaging in conduct that (i) denies the Parties or other persons designated by the Parties or the Court access to their properties, or (ii) impedes any retrofits required to bring their properties into compliance with the FHA, the ADA, and the ADA Standards, or (iii) interferes with the implementation of the terms of this Consent Order as to their properties.

37.    The Rule 19 Defendants shall, for the term of this Consent Order, preserve in their current form any and all existing paper and electronic records, documents, files, and recordings in their custody or control that relate to Burgess Mill Station I and Burgess Mill Station II.  This includes, but is not limited to, all current and former tenant files, all lists of current and former residents, by unit, and all documents related to the design and construction of the two properties.

38.    The Rule 19 Defendants, their agents and affiliated companies, may not raise rents or impose fees on any dwelling unit at their properties because of anticipated or actual retrofits or because of other costs in connection with this Consent Order.

39.    If any architectural or engineering drawings are prepared as part of the retrofitting process for any of the Subject Properties, the responsible Owner Defendant and Developer Defendant shall provide those drawings to the United States for comment and approval within thirty (30) days of such preparation and finalization.  The United States shall provide comments consistent with the Retrofit Plan for the Subject Property within thirty (30) days of receipt.  The responsible Owner Defendant and Developer Defendant shall incorporate those comments into

any relevant architectural or engineering plans and resubmit those to the United States for approval. This process shall continue until the United States has no further comments on any retrofit architectural or engineering plans. If this approval process impacts remediation completion deadlines, the Parties will, in good faith, work together to reach agreement on new deadlines.

40.     By no later than three (3) years from the entry of this Order, the responsible Owner Defendant and Developer Defendant for each Subject Property will complete retrofits to accessible routes and to the public and common-use areas of their Subject Property in accordance with the applicable Retrofit Plan in Appendix A and the Remediation Protocol.[4]

41.     By no later than three (3) years from the entry of this Order, the responsible Owner Defendant and Developer Defendant for each Subject Property will complete retrofits to all unit interiors of the covered multifamily dwellings of their Subject Property in accordance with the applicable Retrofit Plan in Appendix A and the Remediation Protocol.[5]

42.     Each responsible Owner Defendant and Developer Defendant will retrofit the interior of a covered multifamily dwelling at their respective Subject Property no later than the first time that a unit becomes vacant following eighteen (18) months after the entry of this Order and before that unit is occupied by a new tenant or resident.

43.     Within forty-five (45) days from the entry of this Order, each Owner Defendant

---

[4] "Remediation Protocol" refers to the agreement dated September 13, 2021, entered into by Plaintiff United States of America and Defendants Stavrou Associates Inc., R & S LLC, Glenmore Associates LP, Windsor Family Associates LP, Windsor Elderly Associates LP, Rainier Manor 2 LP, Chapel Springs LP, Belle Hill Manor LP, Hammarlee House Associates LP, Oak Grove Associates LP, and Hampshire Village Associates LP in this action.

[5] If a tenant refuses to allow retrofits to be made in his or her unit during this three-year period, the responsible Owner Defendant will notify the United States and the Parties will confer in good faith on how to resolve the issue.

will provide a notice that is substantially equivalent to Appendix B to residents at its respective

subject Property.  The notice will inform residents that the responsible Owner Defendant and

Developer Defendant have agreed: (a) they will perform certain retrofits to the dwelling units;

(b) they will retrofit each covered unit within three years of the entry of the Order; (c) a resident

may schedule the retrofits within that time; (d) the retrofits will be performed at no cost to the

resident; and (e) to make arrangements, if necessary, for the temporary relocation of resident(s)

while the retrofits are being made, including either provision of temporary housing at one of the

Subject Properties or a monetary payment equivalent to the U.S. General Services

Administration temporary relocation rate to cover the costs of temporary lodging or a hotel stay

for the resident(s) for as long as the resident(s) will be dislocated, as required in paragraph 46 of

this Order.

     44.     If residents wish to have the retrofits to their unit completed in a particular time

frame, they may submit a written request, and the requests will be granted by the responsible

Developer Defendant and Owner Defendant on a first-come, first-served basis.  The responsible

Developer Defendant and Owner Defendant must complete the retrofits as promptly as practical,

but no later than ninety (90) days from the date on which the retrofits were requested by a

resident on a first-come, first-served basis, with such deadlines being subject to Paragraphs 41

and 42 of this Order.

     45.     The responsible Developer Defendant and Owner Defendant will endeavor to

minimize inconvenience to residents in scheduling and performing retrofits required by this

Order at its Subject Property.

     46.     The responsible Developer Defendant and Owner Defendant for each Subject

Property will offer all residents of a unit scheduled to undergo a retrofit who will be dislocated

from the unit for more than twelve (12) consecutive hours a similarly-sized furnished unit or accommodations in a hospitality suite at the Subject Property at no cost. In the event that a similarly-sized furnished unit at the Subject Property is not available, or the resident does not want to stay in a hospitality suite, the responsible Owner Defendant will pay the resident the applicable government per diem rate for food and lodging for the local area (as available at www.gsa.gov – click on "per diem rates" under travel) for each day the resident is dislocated. This payment will be made prior to the commencement of any retrofit work on the resident's unit, so that the resident can use the money to obtain alternative living accommodations and food while dislocated.

47. Within sixty (60) days from the entry of this Order, each responsible Owner Defendant will provide written notice to all residents at its Subject Property stating that the retrofits required by this Order will be performed to the public and common-use areas of the Subject Property, which include unit entrances and accessible routes. This notice will conform to Appendix G. Each responsible Owner Defendant will certify to the United States in writing that the notices have been distributed and the manner in which they were distributed within ten (10) days after such distribution.

## V. Neutral Inspector

### A. Neutral Inspector for Surveyed Properties

48. Each responsible Owner Defendant and Developer Defendant will enter into a contract with one or more neutral inspector(s) approved by the United States ("Inspector") to conduct on-site inspections of the retrofits that have been performed under this Order at their Subject Property to determine whether the retrofits have been completed in accordance with the specifications in the Retrofit Plan for their Subject Property contained in Appendix A and the

Remediation Protocol.  The Inspector(s) will have expertise in the FHA, the FHA Guidelines, ADA, ADA Standards, and ANSI A117.1-1986.

49.    An inspection of each Subject Property will take place within thirty (30) days of the completion of all of the retrofits to all of the accessible routes and the public and common-use areas and the covered multifamily dwelling units, or as soon as practicable thereafter for each.  Separate inspections may be conducted at different times for: (a) accessible routes and public and common use areas; and (b) covered dwelling units.  The responsible Owner Defendant and responsible Developer Defendant for each Subject Property will give the United States at least three (3) weeks' notice of the inspection and will give the United States an opportunity to have its representative present for the inspection.

50.    The retrofit inspections conducted by the Inspector shall be made in accordance with this Order, the Retrofit Plans in Appendix A, and the Remediation Protocol.

51.    The Inspector will prepare a written report setting out the results of each inspection of the Subject Property, including deficiencies, if any, and will send that report to counsel for the responsible Owner Defendant and Developer Defendant and the United States. The Inspector will take digital photographs of any deficiencies identified at each Subject Property, and include such photographs in the report.  If the inspection indicates that not all the required retrofits have been made, the responsible Owner Defendant and Developer Defendant for that specific Subject Property, as set forth in Table I, will correct any deficiencies within 90 days, or as soon as practicable thereafter, and will then schedule and pay for another inspection by the same Inspector to certify the deficiencies have been corrected.  This process will continue until the Inspector certifies that all the necessary retrofits have been made.  If the United States does not object to the certification or request to conduct its own inspection pursuant to paragraph

52 within thirty (30) days after receiving the Inspector's final certification, the retrofit obligations relating to the property in question will be considered fully satisfied and discharged.

52.     The responsible Owner Defendant and Developer Defendant for each Subject Property will pay all of the Inspector's reasonable costs associated with these inspections of their Subject Property, and such payments will be made without regard to the Inspector's findings. Upon reasonable notice to the responsible Owner Defendant and Developer Defendant, representatives of the United States will be permitted to inspect the completed retrofits made in accordance with this Order, to ensure compliance; provided, however, that the United States will endeavor to minimize any inconvenience caused by such inspections.  Such inspections must be conducted by the United States within sixty (60) days of receiving the Neutral Inspector's final certification that all retrofits have been completed.

### VI.      Transfer of Interest in Subject Properties

53.     The sale, or any other transfer of ownership, in whole or in part, whether voluntary or involuntary, of any of the Subject Properties shall not affect the continuing obligation of the Defendants to retrofit the Subject Property for which they are responsible (see Table I) as specified in this Order.  Should an Owner Defendant sell or transfer ownership of its respective Subject Property, in whole or in part, or any portion thereof, prior to the completion of the retrofits specified in Section IV of this Order, the responsible Owner Defendant will, at least thirty (30) days prior to completion of the sale or transfer: (a) provide to each prospective buyer a written notice that the Subject Property is subject to this Order, including specifically the obligations of the Owner Defendants and Developer Defendants to complete required retrofit work and to allow inspections, along with a copy of this Order; and (b) provide to the United States, by e-mail and first-class mail, written notice of the intent to sell or transfer ownership,

along with a copy of the notice sent to each buyer or transferee, and each buyer's or transferee's name, address, and telephone number.

54.      Should Rule 19 Defendants decide to sell or transfer ownership of Burgess Mill Station I or Burgess Mill Station II or any portion thereof prior to the expiration of this Consent Order as to those properties, Rule 19 Defendants agree to: (a) prior to completion of sale or transfer, provide each prospective buyer a copy of the Complaint, this Consent Order, and, if applicable, a copy of a subsequent consent order or other order by the Court relating to their properties;  (b) upon completion of the sale, within fourteen (14) days provide to the United States and SAI, by electronic mail, and overnight delivery, written notice of the sale or transfer of ownership, along with a copy of the notice sent to each buyer prior to the completion of the sale or transfer, and each buyer's name, address, and telephone number; (c) secure the written consent of the buyer(s) to become Rule 19 Defendant(s) in this action; (d) request that the Court amend the Consent Order to replace the current Rule 19 Defendants with the buyer(s) who shall be subject to all provisions applicable to Rule 19 Defendants; and (e) assign all of their obligations under the Cooperation Agreement with SAI to the buyers subject to the approval of the United States and SAI.

## VII.    Prohibition against Raising Rent Prices

55.      The Owner Defendants, their agents, and affiliated companies may not, at their respective Subject Property, raise the rent price of any dwelling unit, or demand any deposit or other fee for a dwelling unit at their respective Subject Property solely because of contemplated or completed retrofits in a dwelling unit.

## VIII. Non-Discrimination Requirements in Future Properties

56.      The Owner Defendants and Developer Defendants warrant that they are not

currently developing any multi-family housing properties, and they hereby represent that they do not intend to develop any such housing during the course of this Order.  If this situation changes, the Owner Defendants and Developer Defendants shall provide notice to the United States within thirty (30) days of entering into any written agreements concerning any new housing development, and paragraphs 57 and 58 shall therefore apply.

57.    If the Owner Defendants and Developer Defendants develop any new housing over the course of this Order, the Owner Defendants and Developer Defendants will maintain, and provide to the United States, the following information and statements regarding properties under construction and any other future covered multifamily dwellings intended to be developed, built, designed, constructed, or engineered in whole or in part, by any of them or by any entities in which the Owner Defendants and Developer Defendants have a position of control as an officer, director, member, or manager, or have a ownership share, provided, however, that such information and statements need to be maintained and/or provided only on properties in which the Owner Defendants and Developer Defendants are actually involved, not on those properties in which they bid or express an interest, but do not become finally involved:

i.    The name and address of the property;

ii.    A description of the property and the individual units;

iii.    The name, address, and telephone number of the civil engineer(s) involved with the project;

iv.    A statement from the civil engineer(s) involved with the property acknowledging and describing his/her knowledge of and training in the requirements of the FHA and the ADA and in the field of accessible site design, and certifying that he/she has reviewed the engineering documents for the project and that the design specifications therein fully comply with the requirements of the FHA (*e.g.* the FHA Guidelines, ANSI A117.1-1986 or another HUD-recognized safe harbor), and the ADA Standards (where applicable);

v.    The name, address, and telephone number of the architect(s) involved with the property;

vi.     A statement from all architect(s) involved with the property, (1) acknowledging and describing their knowledge of and training in the FHA, 42 U.S.C. § 3406(f)(1), (f)(2), and (f)(3)(C), the FHA Guidelines, the ADA, 42 U.S.C. § 12183(a)(1), the ADA Standards, and the field of accessible site design, and (2) certifying that he/she has reviewed the architectural plans for the property and that the design specifications therein fully comply with the requirements of the FHA (*e.g.* the FHA Guidelines, ANSI A117.1-1986 or another HUD-recognized safe harbor), and the ADA Standards (where applicable).

vii.     If the engineering documents or architectural plans are revised, and the revisions could have any impact on the accessibility of the dwellings or property, each of Defendants will obtain, maintain, and provide to the United States upon request, a statement from the civil engineer(s) or architect(s) involved with the property that all specifications in the revised engineering documents or architectural plans, as pertinent, comply with the FHA, the FHA Guidelines, and the ADA, the ADA Standards, and ANSI A117.1-1986.

58.     If the Owner Defendants and Developer Defendants develop any new housing during the course of this Order, the Owner Defendants and Developer Defendants will take all actions to make the construction of any property covered by Paragraph 56, above, fully compliant with the FHA (*e.g.* the FHA Guidelines, ANSI A117.1-1986 or another HUD-recognized safe harbor), and the ADA Standards (where applicable). During the term of this Order, upon reasonable notice, the United States will be permitted full access to such properties to inspect for compliance with the FHA (*e.g.* the FHA Guidelines, ANSI A117.1-1986 or another HUD-recognized safe harbor), and the ADA Standards (where applicable).

## IX.    Monetary Damages for Aggrieved Persons

59.     Within ninety (90) days from the entry of this Order, Defendant SAI shall deposit in an interest-bearing escrow account the sum of One Hundred Seventy Five Thousand Dollars ($175,000.00), for the purpose of paying monetary damages to prospective, current, and former residents of the Subject Properties deemed by the United States to be aggrieved persons (hereinafter "aggrieved persons"). This shall be called the "Settlement Fund." All expenses related to the establishment of the account shall be borne by Defendant

SAI.  Within fifteen (15) days of the establishment of the Settlement Fund, SAI shall submit proof to the United States that the account has been established and the funds deposited.  No further payment to the Settlement Fund shall be required from the Defendants or Rule 19 Defendants irrespective of the number of claims made to the fund by allegedly aggrieved persons, and none of the Defendants or Rule 19 Defendants shall have any liability to any aggrieved person following the disbursement of all Settlement Fund proceeds in accordance with this Order.

60.    Any interest accruing to the Settlement Fund shall become a part of the Fund and be utilized as set forth herein.

61.    Defendant SAI shall be solely responsible for any taxes assessed or owed on any interest earned on money deposited in accordance with Paragraph 59, above.

62.    Within forty-five (45) days from the entry of this Order, the responsible Owner Defendant for each Subject Property shall send, by first-class mail, postage pre-paid, a copy of the Notice to Potential Victims of Housing Discrimination ("Notice"), set forth in Appendix C to each current tenant at any Subject Property and to past tenants for the seven years prior to the effective date of this Consent Decree for whom they have records.[6]

63.    For past tenants, the responsible Owner Defendant will have complied with the requirements of paragraph 62 by mailing the Notice to the forwarding address provided to the owners or managers of its Subject Property or their agents by the former tenant at the time the former tenant moved out.  Within seventy (70) days from the entry of this Order, the responsible Owner Defendant shall provide counsel for the United States with a declaration affirming that the responsible Owner Defendant has complied with this paragraph, and a spreadsheet showing

---

[6] SAI will ensure that that the notices required by Paragraphs 62 and 63 are sent for Burgess Mill I and II.

each recipient's name, address, and the date the Notice was sent.

64.     The responsible Owner Defendant shall permit the United States, upon reasonable notice, to review any records, including but not limited to, complete tenant files, tenant lists, reasonable accommodation requests, and reasonable modification requests, that may reasonably facilitate its determinations regarding the claims made by alleged aggrieved persons, provided that such persons consent to the disclosure of such information.

65.     Within forty-five (45) days from the entry of this Order, the responsible Owner Defendant for each Subject Property shall cause a link to an electronic version of the Notice in Appendix C to be posted on the first page that residents of its Subject Property encounter after they log into the website that is provided exclusively for tenants of those properties (hereinafter, "Tenant Portals").  The Notice will only reference the Subject Property to which each Tenant Portal applies.  The link on the Tenant Portals shall state: "Notice to Persons Who May Have Suffered from Inadequate Accessible Features at the Property" (or words to that effect and understanding) and shall appear on the upper half of the portal website, in a conspicuous font style and color.  The Notice shall remain on the Tenant Portal for at least one hundred and eighty days (180) from the date it is posted.  Within seventy (70) days from the entry of this Order, the responsible Owner Defendant for each Subject Property shall provide counsel for the United States with a declaration affirming compliance with the terms of this paragraph, and a snapshot of the Tenant Portal for each property.[7]

66.     Within sixty (60) days from the entry of this Order, the responsible Owner Defendant for each subject property shall send a copy of the letter Notice to each of the organizations listed in Appendix H.

---

[7] SAI has entered into an agreement with the owners of Burgess Mill I and II which requires the posting of this notice on the tenant portals for these properties.

67.     Nothing in this Order shall preclude the United States from making its own efforts to locate, interview and provide notice to potential aggrieved persons.

68.     Within eighteen (18) months from the entry of this Order, the United States shall determine which persons are aggrieved and an appropriate amount of damages that should be paid to each person from the Settlement Fund.  Defendants agree that the determinations of the United States shall be final, and Defendants hereby waive the right to contest the United States' determinations in this or any other proceeding.  Defendants agree as part of this Order that they will not seek to interfere with or oppose the United States' determinations regarding the aggrieved persons and the appropriate amount of damages to be paid to each.

69.     Within eighteen (18) months from the entry of this Order, the United States will inform Defendants in writing of its determinations required under Paragraph 68, together with a copy of a sworn declaration from each aggrieved person.

70.     After completion of the process described in Paragraphs 62-69, the United States shall submit the final recommendation for distribution of the Settlement Fund to the Court for approval.  The United States will request that the Court issue an Order approving or denying payment of any claims submitted for consideration.

71.     Within sixty (60) days from the Court's entry of the Order approving payment to aggrieved persons, Defendant SAI shall deliver to the United States checks payable to the aggrieved persons, or to the aggrieved person's estate, heir(s) of their estates, or legal guardians if requested by the United States.  The United States will distribute the check to each aggrieved person – or to the executor of the aggrieved person's estate, heirs, or guardians, if appropriate – after the United States has received a signed release in the form of Appendix D.  The United

States will provide SAI with a copy of the signed release from each aggrieved person within sixty (60) days after the check is distributed to the aggrieved person.

72.     After the satisfaction of Paragraphs 59-71, above, and the expiration of the corresponding time periods, any money remaining in the Settlement Fund, including interest, shall be distributed to the United States Treasury in the form of an electronic funds transfer based on written instructions to be provided by the United States.

## X.    Civil Penalty

73.     Within sixty (60) days from the entry of this Order, Defendant SAI will pay civil penalties of ten thousand dollars ($10,000.00), under 42 U.S.C. § 3614(d)(1)(C) and 42 U.S.C. § 12188(b)(2)(C)(i) to vindicate the public interest.  This payment shall be in the form of an electronic funds transfer in accordance with written instructions to be provided by the United States.  The civil penalty is a debt for a fine, penalty, or forfeiture payable to and for the benefit of the United States within the meaning of 11 U.S.C. § 523(a)(7), and is not compensation for actual pecuniary loss.

## XI.    Training[8]

74.     Within thirty (30) days from the entry of this Order, each responsible Owner Defendant and responsible Developer Defendant will provide a copy of this Order (without

---

[8] For Burgess Mill Station I and II, SAI shall comply with its obligations in Paragraphs 74 and 75 by sending to Rule 19 Defendants a copy of the Order, with portions of Exhibit A that apply to Burgess Mill Station I and II, with a request that they: (1) provide it to their employees and agents who are involved in the design and construction of Burgess Mill Station I and II, and, (2) secure a signed statement similar to the form of Appendix E.  SAI shall comply with its obligations in Paragraph 76 for these properties by sending to Rule 19 Defendants links to the referenced documents and requesting them to require their employees and agents who have supervisory authority over the design and/or construction of Burgess Mill Station I and II to be familiar with, and personally review, these documents.

Exhibit A) to all their agents[9] and employees involved in the design or construction of their respective Subject Properties after the date of this Order for the purpose of carrying out the terms of this Order.  Defendants shall secure a signed statement from each agent or current employee acknowledging that he or she has received and read the Order and has had an opportunity to have questions about the Order answered.  This statement will be substantially similar to the form of Appendix E.

75.     Each responsible Owner Defendant and responsible Developer Defendant will provide a copy of this Order (without Exhibit A) to each new agent or employee involved in the design and construction of any of their respective Subject Property or future covered multifamily dwelling property who is hired after the date of this Order within thirty (30) days after the date he or she commences an agency or employment relationship.   Each responsible Owner Defendant and responsible Developer Defendant shall secure from each such new agent or employee a signed statement acknowledging that he or she has received and read the Order, and has had an opportunity to have questions about the Order answered.  This statement will be substantially similar to the form of Appendix E.

76.     Within ninety (90) days from the entry of this Order, the Defendants will ensure that their employees and agents who have supervisory authority over the design and/or construction of covered multifamily dwellings that Defendants design and/or construct have a copy of, are familiar with, and personally review, the Fair Housing Accessibility Guidelines, 56 Fed. Reg. 9472 (1991), and HUD's Fair Housing Act Design Manual, A Manual to Assist Builders in Meeting the Accessibility Requirements of the Fair Housing Act, (August 1996, Rev.

---

[9] For paragraphs 74 and 75, if an "agent" is a legal entity, then its representative shall sign the Appendix E statement.

April 1998).  All employees and agents whose duties, in whole or in part, involve the management, sale and/or rental of each Subject Property will be informed of those portions of the FHA that relate to reasonable accommodations and reasonable modifications for individuals with disabilities.

77.     Within ninety (90) days from the entry of this Order, Defendants and all their employees whose duties, in whole or in part, involve or will involve supervisory authority over the development, design and/or construction of multifamily dwellings will undergo training on the design and construction requirements of the FHA and the ADA.  The training will be conducted by a qualified individual unconnected to Defendants or Defendants' attorneys who has been previously approved by the United States.  Any expenses associated with this training will be borne by each responsible Owner Defendant and responsible Developer Defendant.

78.     Defendants will provide to the United States in its reporting under Paragraph 81 the name(s), address(es), and telephone number(s) of the trainer(s); copies of the training outlines and any materials distributed by the trainers; and certifications executed by all Defendants and covered employees confirming their attendance, in a form substantially equivalent to Appendix F.

### XII.    Notice of Defendants' Non-Discriminatory Policy

79.     Within ten (10) days from the entry of this Order, each responsible Owner Defendant and Developer Defendant and each Rule 19 Defendant will post and prominently display in the sales or rental offices of their respective Subject Property a sign no smaller than 10 by 14 inches indicating that all dwellings are available for rental on a nondiscriminatory basis.  A poster that comports with 24 C.F.R. Part 110 will satisfy this requirement.

80.     In all advertising in newspapers and electronic media regarding the Subject

Properties, or any new covered multifamily dwelling properties that any Owner Defendant or Developer Defendant may develop or construct (if applicable), the responsible Developer Defendant, Owner Defendant or Rule 19 Defendant as applicable will place, in a conspicuous location, a statement that the property contains dwelling units that include features for persons with disabilities required by the Fair Housing Act. The relevant Owner Defendant or Developer Defendant or Rule 19 Defendant will also place the same statement in a conspicuous location on any future production or printing of hard copy media, including pamphlets, brochures, and other promotional literature for the Subject Properties, or any new covered multifamily dwelling properties that any Owner Defendant or Developer Defendant may develop or construct.

### XIII.    Notification and Document Retention Requirements

81.    In addition to the other requirements set forth in this Order, commencing six (6) months from the entry of this Order and every six (6) months thereafter for as long as this Order remains in effect, each Owner Defendant and each Developer Defendant will submit to the United States a report concerning their compliance with all the requirements of this Order for their Subject Property.  The report shall include any documents that the responsible Owner Defendant and Developer Defendant is required to submit under this Order as well as the status of retrofits, and inspections of the retrofits, at their respective Subject Property.  The Rule 19 Defendants will cooperate with the Developer Defendant to provide the Developer Defendant information in the possession, custody, or control of the Rule 19 Defendants necessary to allow the Developer Defendant to comply with this paragraph during the effective period of the Consent Order over the Rule 19 Defendants' respective Subject Properties.

82.    For the duration of this Order as to each of them and while they still own the property, each Owner Defendant will report to the United States a description of any fair housing

complaint filed with an agency or court against its respective covered Subject Property regarding discrimination on the basis of disability in housing. This report shall be made within 30 days of each Owner Defendant's receipt of the complaint. Upon reasonable notice and upon request, the responsible Owner Defendant will also provide the United States all information in its possession concerning any such complaint. The Rule 19 Defendants will cooperate with the Developer Defendant to provide the Developer Defendant information in the possession, custody, or control of the Rule 19 Defendants necessary to allow the Developer Defendant to comply with this paragraph during the effective period of this Consent Order over the Rule 19 Defendants' respective Subject Properties.

83.     Each Owner Defendant and Developer Defendant is required to preserve all records related to this Order, or related to any other covered multifamily dwellings designed, constructed, owned, operated, or acquired by them during the duration of this Order. Upon reasonable notice to any Owner Defendant and Developer Defendant representatives of the United States will be permitted to inspect and copy any of their records or inspect any properties or dwelling units under the control of an Owner Defendant and Developer Defendant bearing on compliance with this Order. The United States will endeavor to minimize any inconvenience to the responsible Defendants and residents from such inspections. During the effective period of this Consent Order over the Rule 19 Defendants' respective Subject Properties, the Rule 19 Defendants will preserve all records for their Subject Properties related to this Order and, upon reasonable notice, will permit the United States to inspect and copy any such records or inspect any of their Subject Properties as provided in this paragraph.

## XIV.  Duration of Consent Order

84.     This Order will remain in effect for three and a half (3.5) years from the date of its

entry, or until six (6) months after the Inspector has certified that all required retrofits have been completed, whichever date is later.  However, once a Subject Property has received a certification from the Inspector that all retrofits have been completed and the United States does not object to the certification or request to conduct its own inspection pursuant to paragraph 52 within thirty (30) days after receiving the Inspector's final certification, that Property and the respective Owner Defendants or Rule 19 Defendants shall be deemed to have complied with this Order and shall no longer be subject to its terms. The Developer Defendants shall remain subject to the terms of this Consent Order for its full duration.

85.    The Court will retain jurisdiction for the duration of this Order to enforce the terms of the Order, at which time the case will be dismissed with prejudice.  The United States may move the Court to extend the duration of the Order in the interests of justice and Defendants shall have the right to oppose such motion.

86.    All Parties and Rule 19 Defendants will endeavor, in good faith, to resolve informally any differences regarding interpretation of and compliance with this Order prior to bringing such matters to the Court.  However, in the event of a failure by an Owner Defendant or Developer Defendant, or Rule 19 Defendant, to perform, in a timely manner, any act required by this Order or to act in conformance with any provision thereof, the United States may move the Court to impose any remedy authorized by law or equity, with respect to that Owner Defendant or Developer Defendant or Rule 19 Defendant, including, but not limited to, an order requiring performance of such act or deeming such act to have been performed, and an award of any damages, costs, and reasonable attorney's fees which may have been occasioned by the violation or failure to perform.

## XV.     Time for Performance

87.     Any time limits for performance imposed by this Order may be modified by the mutual written agreement of the United States and the relevant Owner Defendants and/or Developer Defendants. If unforeseen conditions outside Defendants' control prevent them from meeting any deadline, the relevant Owner Defendants and/or Developer Defendants will provide supporting documentation to the United States and the parties will confer in good faith to discuss a reasonable revision to the existing deadline.

## XVI.     Release of Litigation Hold

88.     The Parties and the Rule 19 Defendants agree that, as of the date of entry of this Order, litigation is not "reasonably foreseeable" concerning the subject matter of the United States' complaint.  To the extent that any of the Parties and Rule 19 Defendants previously implemented a litigation hold to preserve documents, electronically stored information, or things related to the matters described herein, the party is no longer required to maintain such a litigation hold.  Nothing in this paragraph relieves the parties of any other obligation imposed by this Order.

It is so **ORDERED** BY:  _____

_____
United States District Court for Maryland
The Honorable Judge


Respectfully submitted,


*On behalf of the Plaintiff United States:*


Dated: September 26, 2022



EREK L. BARRON                              KRISTEN CLARKE
United States Attorney                        Assistant Attorney General
District of Maryland                          Civil Rights Division

                                              _____/s/_____
                                              SAMEENA SHINA MAJEED
                                              Chief, Housing and Civil Enforcement Section


_____/s/_____
KIMBERLY S. PHILLIPS                         MICHAEL S. MAURER
Bar No. 811611                               Deputy Chief
Assistant United States Attorney             BETH PEPPER
36 S. Charles Street 4th Floor               JENNIFER MCALLISTER
Baltimore, Maryland 21201                    Trial Attorneys
Phone: (410) 209-4900                        Housing and Civil Enforcement Section
E-mail: Kimberly.Phillips@usdoj.gov          Civil Rights Division
                                             U.S. Department of Justice
                                             4 Constitution Square
                                             150 M Street, N.E., Room 6.1423
                                             Washington, DC 20002
                                             Phone: (202) 305-0916
                                             Fax: (202) 514-1116
                                             E-mail: Beth.Pepper@usdoj.gov
                                             E-mail: Jennifer.Mcallister@usdoj.gov

*On behalf of the Defendants*:

Dated: September 26, 2022

*Steve Stavrou*

R & S, LLC
By: N. Stephen Stavrou, Sole Member
2661 Riva Road, Bldg. 300, Suite 320
Annapolis, MD 21403

*Steve Stavrou*

Stavrou Associates, Inc.
By: N. Stephen Stavrou, President
2661 Riva Road, Bldg. 300, Suite 320
Annapolis, MD 21403

*Steve Stavrou*

Windsor Elderly Associates, LP
By Windsor Elderly, LLC,
By Stavrou at Windsor Elderly, LLC
By: N. Stephen Stavrou, Managing Member
2661 Riva Road, Bldg. 300, Suite 320
Annapolis, MD 21403

*Steve Stavrou*

Windsor Family Associates LP
By Windsor Family LLC,
By: Stavrou At Windsor Family LLC
By: N. Stephen Stavrou, Managing Member
2661 Riva Road, Bldg. 300, Suite 320
Annapolis, MD 21403

*Steve Stavrou*

Hampshire Village Associates LP
By: Stavrou at Hampshire
By: N. Stephen Stavrou, Managing Member
2661 Riva Road, Bldg. 300, Suite 320
Annapolis, MD 21403

*Steve Stavrou*
_____
Oak Grove Associates LP
By Stavrou at Oak Grove, LLC
By: N. Stephen Stavrou, Managing Member
2661 Riva Road, Bldg. 300, Suite 320
Annapolis, MD 21403

*Steve Stavrou*
_____
Glenmore Associates LP
By Stavrou at Glenmore LLC
By: N. Stephen Stavrou, Managing Member
2661 Riva Road, Bldg. 300, Suite 320
Annapolis, MD 21403

*Steve Stavrou*
_____
Hammarlee House Associates, LP
By Furnace Branch Woods, LLC
By Stavrou at Branch View LLC
By: N. Stephen Stavrou, Managing Member
2661 Riva Road, Bldg. 300, Suite 320
Annapolis, MD 21403

*Steve Stavrou*
_____
Belle Hill Manor LP
By Belle Hill Manor LLC
By Stavrou at Belle Hill, LLC
By: N. Stephen Stavrou, Managing Member
2661 Riva Road, Bldg. 300, Suite 320
Annapolis, MD 21403

*Steve Stavrou*
_____
Rainier Manor II LP
By Stavrou at Rainier Manor 2 LLC
By: N. Stephen Stavrou, Managing Member
2661 Riva Road, Bldg. 300, Suite 320
Annapolis, MD 21403

*Steve Stavrou*
_____
Chapel Springs LP
By Stavrou at Chapel Springs, LLC
By: N. Stephen Stavrou, Managing Member
2661 Riva Road, Bldg. 300, Suite 320
Annapolis, MD 21403

*Attorneys for Defendants:*

_____

Minh N. Vu
Attorneys for Defendants
Seyfarth Shaw LLP
975 F Street, N.W.
Washington, DC 20004


*On behalf of the Rule 19 Defendants*:


Dated: September 26 2022

Milltowne Associates, LP, a Maryland limited partnership
By its General Partner:
HCH Partners III, LLC, a Maryland limited liability company
By:  Howard County Housing Commission, Sole Member

_____
Name:  Peter Engel
Title:  Executive Director


Howard County Housing Commission

By:  _____

Name:  Peter Engel
Title:  Executive Director

*Attorneys for Rule 19 Defendants:*

BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.

BY:  _____
Michael Schollaert
100 Light Street
19th Floor
Baltimore, MD  21202