_____ FILED _____ ENTERED
_____ LOGGED _____ RECEIVED

OCT 1 9 2023

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY                                      DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 22-2448 |
| | ) | |
| HUMPHREY-STAVROU ASSOCIATES INC., | ) | |
| R & S LLC, | ) | |
| STAVROU ASSOCIATES INC., | ) | |
| BELLE HILL MANOR LP, | ) | |
| CHAPEL SPRINGS LP, | ) | |
| COUNTRY VIEW ELDERLY ASSOCIATES LP, | ) | |
| GLENMORE ASSOCIATES LP, | ) | |
| HAMMARLEE HOUSE ASSOCIATES LP, | ) | |
| HAMPSHIRE VILLAGE ASSOCIATES LP, | ) | |
| OAK GROVE ASSOCIATES LP, | ) | |
| PIN OAK ELDERLY ASSOCIATES LP, | ) | |
| RAINIER MANOR 2 LP, | ) | |
| RANDOLPH VILLAGE ASSOCIATES LP, | ) | |
| WINDSOR ELDERLY ASSOCIATES LP, and | ) | |
| WINDSOR FAMILY ASSOCIATES LP, | ) | |
| | ) | |
| Defendants, | ) | |
| and | ) | |
| | ) | |
| AVANATH VISTA LAKES, LLC, | ) | |
| AVANATH LARGO CENTER, LLC, | ) | |
| CDT SP HENSON CREEK LLC, | ) | |
| a Delaware limited liability company | ) | |
| HOWARD COUNTY HOUSING COMMISSION, and | ) | |
| MILLTOWNE ASSOCIATES, LP, | ) | |
| | ) | |
| Rule 19 Defendants. | ) | |
| | ) | |

**CONSENT ORDER AS TO HUMPHREY-STAVROU ASSOCIATES, INC.,
RELATED DEFENDANTS, AND RULE 19 DEFENDANTS**

1

## I.     Introduction

1.     This Consent Order ("Order" or "Consent Order") resolves the allegations in the United States' Complaint, filed on September 27, 2022, to enforce provisions of the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601-3619, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181-12189, regarding these Defendants: (a) Humphrey-Stavrou Associates, Inc. ("HSAI") (b) Pin Oak Elderly Associates, LP; (c) Country View Elderly Associates, LP; and (d) Randolph Village Associates LP (collectively, "HSA Defendants"), and Rule 19 Defendants: (a) Avanath Vista Lakes, LLC; (b) Avanath Largo Center, LLC, and (c) CDT SP Henson Creek LLC (collectively, "Rule 19 Defendants").  In its Complaint, the United States alleges that the HSA Defendants engaged in a pattern or practice of discrimination against persons with disabilities and denied rights to a group of persons because of disability by failing to design and construct one or more covered multifamily dwellings in compliance with the FHA and the ADA.

2.     Rule 19 Defendant Avanath Vista Lakes, LLC is incorporated under the laws of Delaware with a principal place of business at 1920 Main Street, Suite 150, Irvine, California 92614, and is the current owner of the Vistas at Lake Largo.  In this capacity, Avanath Vista Lakes, LLC is a party necessary to this lawsuit under Fed. R. Civ. P. 19 in whose absence complete relief cannot be afforded to the United States.

3.     Rule 19 Defendant Avanath Largo Center, LLC is incorporated under the laws of Delaware with a principal place of business at 1920 Main Street, Suite 150, Irvine, California 92614, and is the current owner of Acclaim at Lake Largo (formerly, Largo Center Apartments). In this capacity, Avanath Largo Center, LLC is a party necessary to this lawsuit under Fed. R. Civ. P. 19 in whose absence complete relief cannot be afforded to the United States.

4.     Rule 19 Defendant CDT SP Henson Creek LLC is incorporated in Delaware with a principal place of business at 5403 West Gray Street, Tampa, Florida 33609, and is the current owner

of Woodland Creek Apartments (formerly, Henson Creek Manor Apartments I and II).  In this capacity, CDT SP Henson Creek LLC is a party necessary to this lawsuit under Fed. R. Civ. P. 19 in whose absence complete relief cannot be afforded to the United States.

5.      HSA Defendants deny the allegations asserted in the Complaint, including but not limited to the allegation in the Complaint that any of the Subject Properties (as defined below) are not in compliance with the FHA, ADA, or any other applicable federal code, rule, or regulation pertaining to accessibility (the "Accessibility Requirements"), and HSA Defendants further deny any assertion that they intentionally or otherwise failed to comply with such Accessibility Requirements in their ownership, design, development, and/or construction of the Subject Properties described below.  The Rule 19 Defendants also expressly deny any wrongdoing in connection with the allegations asserted in the Complaint.

6.      The United States and HSA Defendants acknowledge that this Consent Order does not constitute, and should not be construed as, an admission of wrongdoing by HSA Defendants.

7.      The United States and Rule 19 Defendants acknowledge that this Consent Order does not constitute, and should not be construed as, an admission of wrongdoing by the Rule 19 Defendants. The United States has not alleged in its Complaint any wrongdoing by the Rule 19 Defendants.

## II. Covered Properties and Defendants

8.      HSAI participated in the design and construction of six "Subject Properties" at issue in this action. These Subject Properties are:

    a.    Acclaim at Lake Largo (formerly, Largo Center Apartments);
    b.    Pin Oak Village;
    c.    Randolph Village Apartments;
    d.    Vistas at Lake Largo;
    e.    Woodland Creek Apartments (formerly, Henson Creek Manor Apartments
          I and II); and
    f.    Woodside Village Apartments.

9.      HSA Defendant Pin Oak Elderly Associates, LP is the current owner of Pin Oak Village.

10.     HSA Defendant Randolph Village Associates, LP is the current owner of Randolph Village Apartments.

11.     HSA Defendant Country View Elderly Associates, LP is the current owner of Woodside Village Apartments.

12.     Defendant HSAI participated in the design and construction of Acclaim at Lake Largo (formerly, Largo Center Apartments), which is currently owned by the Rule 19 Defendant, Avanath Largo Center, LLC.

13.     Defendant HSAI participated in the design and construction of Vistas at Lake Largo, which is currently owned by the Rule 19 Defendant, Avanath Vista Lakes, LLC.

14.     Defendant HSAI participated in the design and construction of Woodland Creek Apartments (formerly, Henson Creek Manor Apartments I and II), which is currently owned by the Rule 19 Defendant, CDT SP Henson Creek, LLC.

15.     The United States and HSA Defendants shall be referred to collectively as the "Parties."  As used in this Consent Order, the terms "responsible HSA Defendant" shall, with respect to any property owned by a Rule 19 Defendant, be deemed to refer to Defendant HSAI.

4

16.     For purposes of this Order, the United States, HSA Defendants, and Rule 19 Defendants agree that all the Subject Properties are subject to the design and construction requirements of the FHA, 42 U.S.C. §§ 3604(f)(1), (f)(2), and (f)(3)(C), and the ADA, 42 U.S.C. § 12183(a)(1).

### III.    Applicable Requirements of the FHA and ADA

17.     The FHA provides that, for residential buildings with an elevator consisting of four or more dwelling units, all units that are designed and constructed for first occupancy after March 13, 1991, are "covered multifamily dwellings" and must include features of adaptive design to make such units accessible to a person who has or develops a disability.  42 U.S.C. §§ 3604(f)(3)(C) and (f)(7)(A).

18.     The FHA provides that, for non-elevator residential buildings with four or more dwelling units, all ground-floor units that are designed and constructed for first occupancy after March 13, 1991, are "covered multifamily dwellings" and must include features of adaptive design to make such units accessible to a person who has or develops a disability. 42 U.S.C. §§ 3604(f)(3)(C) and (f)(7)(B).

19.     The accessibility provisions of the FHA require that, for covered multifamily dwellings: (i) the public use and common-use portions of such dwellings are readily accessible to and usable by persons with a disability; (ii) all the doors designed to allow passage into and within all premises within such dwellings are sufficiently wide to allow passage by persons with a disability using wheelchairs; (iii) all premises within such dwellings contain the following features of adaptive design: (I) an accessible route into and through the dwelling; (II) light switches, electrical outlets, thermostats, and other environmental controls in accessible locations; (III) reinforcements in bathroom walls to allow later installation of grab bars; and (IV) usable kitchens and bathrooms such that an individual using a wheelchair can maneuver about the space.  42 U.S.C. § 3604(f)(3)(C).

5

20.     For purposes of this Order, HSA Defendants and Rule 19 Defendants agree that the Subject Properties were constructed for first occupancy after March 13, 1991, and therefore all the units in buildings with elevators and all ground-floor units in non-elevator buildings at the Subject Properties are "covered multifamily dwellings" within the meaning of the FHA, 42 U.S.C. § 3604 (f)(7)(A) and (B).  As such, those units and the public and common-use areas must comply with the accessibility requirements of the FHA.

21.     Both the ADA and the ADA Standards for Accessible Design, ADA Accessibility Guidelines for Buildings and Facilities, 28 C.F.R. pt. 36, app. A ("ADA Standards"), which have been issued by the U.S. Department of Justice to implement the design and construction requirements of Title III of the ADA, require that all "public accommodations" designed and constructed for first occupancy after January 26, 1993, and the goods, services, facilities, privileges, advantages, or accommodations of those public accommodations, be readily accessible to and usable by persons with disabilities in accordance with certain accessibility standards promulgated under that Act.  42 U.S.C. §§ 12182(a) and 12183(a)(1).  Rental or sales offices, and the facilities and privileges provided at those offices, such as restrooms open to visitors and guests and public parking, are "public accommodations" under the ADA.  42 U.S.C. § 12181(7)(E).

22.     For purposes of this Order, HSA Defendants and Rule 19 Defendants agree that all the rental offices for the Subject Properties were constructed for first occupancy after January 26, 1993, and, therefore, the rental offices and the facilities and privileges provided at those offices, such as restrooms and public parking, are required to be designed and constructed in accordance with the ADA and the ADA Standards.

## IV.     Description of the Subject Properties

23.     The Subject Properties house families with children, seniors, and persons with disabilities, including low-income residents.

6

24.     The Subject Properties were built using federal Low-Income Housing Tax Credits ("LIHTCs").

25.     The Subject Properties were built using funds from the HOME Investment Partnerships Program ("HOME funds"), 42 U.S.C. §§ 12701 et al.

26.     To be eligible to receive HOME funds administered through the United States Department of Housing and Urban Development ("HUD"), the Defendants are required to adhere to the accessibility requirements of the FHA and the ADA.

27.     **Acclaim at Lake Largo (formerly Largo Center Apartments)** is a multifamily property located at 520 Largo Center Drive in Largo, MD 20744.  This development consists of two, five-story elevator buildings with 100 covered dwelling units, common-use areas and amenities. There is also a leasing office with restrooms open to prospective residents. The property was built for first occupancy after March 13, 1991.

28.     **Pin Oak Village** is a senior multifamily apartment building located at 16010 Excalibur Road, Bowie, MD 20716.  The development consists of one four-story residential building with elevators.  There are 220 covered dwelling units common-use areas and amenities.  There is a leasing office with restrooms open to prospective residents.  This property was built for first occupancy after March 13, 1991.

29.     **Randolph Village Apartments** is a senior multifamily apartment building located at 531 Randolph Road, Silver Spring, MD 20904.  This development consists of a three-story elevator building.  There are 130 covered dwelling units, common-use areas and amenities.  There is a leasing office with restrooms open to prospective residents.  This property was built for first occupancy after March 13, 1991.

7

30.     **Vistas at Lake Largo** is a multifamily property located at 500 Harry S. Truman Drive in Upper Marlboro, MD 20774.  This development consists of one residential building with an elevator.  There are 110 covered dwelling units, common-use areas and amenities.  There is a leasing office with restrooms open to prospective residents and members of the public.  This property was built for first occupancy after March 13, 1991.

31.     **Woodland Creek Apartments (formerly, Henson Creek Manor Apartments I and II)** is a multifamily property located at 5320 Haras Place, Fort Washington, MD 20744.  The development consists of fifteen three-story garden-style residential buildings, each with two to six ground floor units with separate private entrances.  There are 70 covered dwelling units, common-use areas and amenities. There is also a leasing office with restrooms open to prospective residents and members of the public. The property was built for first occupancy after March 13, 1991.

32.     **Woodside Village Apartments** is a senior multifamily property located at 6801 Bock Road, Fort Washington, Maryland 20744.  The development consists of one four story residential building with 200 covered dwelling units, common-use areas and amenities.  There is a leasing office with restrooms open to prospective residents.  This property was built for first occupancy after March 13, 1991.

## V.     Consent of the Parties to this Order

33.     The Parties and Rule 19 Defendants agree that this Court has jurisdiction over the subject matter of this case under 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 3614(a) and 12188(b)(1)(B).  The Parties and Rule 19 Defendants further agree that this controversy should be resolved without further proceedings and without an evidentiary hearing or a trial.

34.     As indicated by the signatures appearing below, the Parties and Rule 19 Defendants agree to the entry of this Order.

**It is hereby ORDERED, ADJUDGED, and DECREED:**

## VI.    General Injunction

35.    HSA Defendants are enjoined from discriminating based on disability as prohibited by the FHA or the ADA.

36.    HSA Defendants are enjoined from preventing, hindering, or interfering with the retrofitting ordered herein or the implementation or completion of this Order.

37.    HSA Defendants are enjoined from unreasonably restricting access to the public and common-use areas and unit interiors at Pin Oak Village, Randolph Village Apartments, and Woodside Village Apartments for the purpose of fulfilling the requirements and obligations of the Consent Order, including, but not limited to, planning, evaluating, and performing any action required under this Order, which include, bringing the public and common-use areas and the unit interiors into compliance with the FHA (*e.g.*, the FHA Guidelines, ANSI A117.1-1986 or another HUD-recognized safe harbor) and the ADA and ADA Standards, and interviewing or meeting with residents or tenants to aid in the implementation or completion of this Order.

## VII. Retrofits at the Subject Properties

38.    As set forth herein and in its Complaint, the United States alleges that the Subject Properties do not meet the accessibility requirements of the FHA, the FHA Guidelines, the ADA, and the ADA Standards.  The HSA Defendants deny these allegations.  However, to address the United States' allegations, the HSA Defendants shall complete the actions and retrofits in the Retrofit Plans set forth in Appendix A and the retrofits to be completed pursuant to Section VIII of this Order.[1]

---

[1] The Parties and the Rule 19 Defendants recognize that the construction of certain Subject Properties was subsidized by Low Income Housing Tax Credits. Such properties are subject to the applicable Section 42 regulations; investor, lender, or third party guarantees and contract requirements; related land use covenants or requirements; or the associated Land Use Restriction Agreement.  In the event it is discovered that a retrofit may negatively affect the tax credit status

39.     Each HSA Defendant agrees to remedy, cause to have remedied, or pay to have remedied the conditions at the Subject Property for which it is the owner and/or developer and shall not have obligations related to any Subject Property for which it is not the owner and/or developer.

40.     Defendant HSAI agrees to remedy, cause to have remedied, or pay to have remedied the conditions at the three Subject Properties owned by the Rule 19 Defendants, which are: Acclaim at Lake Largo, Vistas at Lake Largo, and Woodland Creek Apartments.  Defendant HSAI is the responsible HSA Defendant to carry out all terms in this Consent Order that relate to these three Subject Properties owned by the Rule 19 Defendants.  The failure of Defendant HSAI to perform the retrofits required by this Consent Order shall not constitute a violation of the Consent Order by any of the Rule 19 Defendants.

41.     Each HSA Defendant represents and warrants that it has the legal authority to perform and complete all the retrofits that are required at each Subject Property for which it bears responsibility, in accordance with the terms and timetables in this Order. HSAI represents and warrants that it has the financial capacity to establish the Retrofit Fund and the Settlement Fund and anticipates financing its remaining obligations under this Consent Order in accordance with the terms and timetables in the Consent Order.  It is understood and agreed that the Rule 19 Defendants are not responsible under this Consent Order for implementing the retrofits in the Retrofit Plans, or the retrofits required in Section VIII, as said work is the sole and exclusive responsibility of Defendant HSAI with respect to such properties.  No duty to perform the implementation of any of the retrofits required by this Consent Order shall be imposed upon, assumed by, or transferred to any

---

of a property or unit, the Parties and the Rule 19 Defendants will meet and confer. If it is determined that the retrofit would impact tax-credit status, the Parties and the Rule 19 Defendants will, in good faith, seek alternative accessibility modifications to reasonably mitigate the circumstance or other steps for reasonable accommodation or other accessibility remedies considering the overall objectives of the FHA and ADA.

10

of the Rule 19 Defendants due to the filing of a petition of bankruptcy by Defendant HSAI or a default of Defendant HSAI with respect to any of its duties under this Consent Order, including, without limitation, any failure to complete the retrofits required by this Consent Order. Nothing herein shall be deemed to limit the ability of the Rule 19 Defendant to perform any repair, rehabilitation, or maintenance activity at its property during the term of this Consent Order.

42.    Defendant HSAI and each of the Rule 19 Defendants have entered into a Cooperation Agreement to ensure that Defendant HSAI and the Rule 19 Defendants carry out all obligations to fulfill the terms of this Consent Order regarding the properties owned by the Rule 19 Defendants (collectively, the "Cooperation Agreement"). The obligations of Defendant HSAI and the Rule 19 Defendants under the Cooperation Agreement between them are hereby made a part of this Consent Order, and the signed Cooperation Agreements between HSAI and each of the Rule 19 Defendants are attached hereto as Joint Appendix K. Any failure to abide by those obligations shall constitute a violation of this Consent Order, enforceable under Section XIX of this Consent Order.

43.    The Rule 19 Defendants and each of their officers, employees, agents, successors and assigns shall cooperate with the Parties to carry out all terms in this Consent Order that apply to their properties, and shall refrain from engaging in conduct that: (a) denies the Parties or other persons designated by the Parties or the Court access to their properties, or (b) impedes any retrofits required to bring their properties into compliance with the FHA, the ADA, and the ADA Standards, and this Consent Order, or (c) interferes with the implementation of the terms of this Consent Order and the Cooperation Agreement as to their properties.

44.    The Rule 19 Defendants shall preserve in their current form any and all paper and electronic records, documents, files, and recordings in their custody or control that relate to the properties they own. This includes, but is not limited to, all current and former tenant files, all lists

of current and former residents, by unit, and all documents related to the design and construction of the three properties. Nothing herein shall impose a duty on the Rule 19 Defendants to create any new documents or records, or to organize or compile them in any form or format other than the native form or format in the Rule 19 Defendants' records.

45.     If any architectural or engineering drawings are prepared as part of the retrofitting process for Pin Oak Village, Randolph Village Apartments, and Woodside Village Apartments, the responsible HSA Defendant(s) shall provide those drawings to the United States for comment and approval within thirty (30) days of such preparation and finalization. The United States shall provide comments consistent with the Retrofit Plan for the Subject Property within thirty (30) days of receipt. The responsible HSA Defendant shall incorporate those comments into any relevant architectural or engineering plans and resubmit those to the United States for approval. This process shall continue until the United States has no further comments on any retrofit architectural or engineering plans. If this approval process impacts remediation completion deadlines, the Parties will, in good faith, work together to reach agreement on new deadlines.

46.     By no later than five (5) years from the entry of this Order, the responsible HSA Defendant(s) for each Subject Property, which include the properties owned by the Rule 19 Defendants, will ensure completion of retrofits to accessible routes and to the public and common-use areas of their Subject Property in accordance with the applicable Retrofit Plan in Appendix A, and the retrofits to be completed pursuant to Section VIII of this Consent Order.

47.     By no later than five (5) years from the entry of this Order, the responsible HSA Defendant(s) for each Subject Property, which include the properties owned by the Rule 19 Defendants, will ensure completion of retrofits to all unit interiors of the covered multifamily

dwellings of their Subject Property in accordance with the applicable Retrofit Plan in Appendix A, and the retrofits to be completed pursuant to Section VIII of the Consent Order.

48.     For Pin Oak, Woodside, and Randolph Village, each responsible HSA Defendant will retrofit the interior of a covered multifamily dwelling at its respective Subject Property no later than the first time a unit becomes vacant following twenty four (24) months after the entry of this Order and before that unit is occupied by a new tenant or resident for Woodside Village Apartments and Pin Oak Apartments, and thirty six  months after the entry of this Order and before that unit is occupied by a new tenant or resident for Randolph Village Apartments.

49.     The HSA Defendants shall ensure all retrofits required by this Consent Order are completed in a professional and workmanlike manner consistent with generally accepted construction standards for multi-family dwellings.  The HSA Defendants shall complete retrofits using duly licensed contractors acting in conformity with applicable state and local regulations regarding building construction, repairs, and improvements with HSA Defendants being responsible for ensuring that all necessary building permits are obtained and inspections are completed, and for ensuring compliance with related state and local regulatory requirements, including payment of all permit/and or inspection fees.

50.     By no later than ninety (90) days from the entry of this Order, Pin Oak Elderly Associates, LP, Country View Elderly Associates, LP, and Randolph Village Associates LP will provide a notice that is substantially equivalent to Appendix B to residents at its respective Subject Property, and HSAI shall provide a copy of Appendix C to the Rule 19 Defendants for distribution by the Rule 19 Defendants to the residents in their properties.  Each responsible HSA Defendant will certify to the United States in writing that the notices have been distributed and the manner in which they were distributed within ten (10) days after such distribution.

13

51.     If residents of Pin Oak, Woodside, and Randolph Village wish to have the retrofits to their unit completed in a particular time frame, they may submit a written request, and the requests will be granted by the responsible HSA Defendant on a first-come, first-served basis.   The responsible HSA Defendant must complete the retrofits as promptly as practical, but no later than ninety (90) days from the date on which the retrofits were requested by a resident on a first-come, first-served basis, with such deadlines being subject to paragraphs 47 and 48 of this Consent Order.

52.     The responsible HSA Defendant(s) will endeavor to minimize inconvenience to residents in scheduling and performing retrofits required by this Order at its Subject Property.

53.     The responsible HSA Defendant(s) for each Subject Property will offer all residents of a unit scheduled to undergo a retrofit who will be dislocated from the unit for more than twelve (12) consecutive hours a similarly-sized furnished unit or accommodations in a hospitality suite at the Subject Property at no cost, to the extent that such a unit or accommodation is available at the Subject Property.   In the event that a similarly-sized furnished unit at the Subject Property is not available, the responsible HSA Defendant(s) will pay the resident the applicable government per diem rate for food and lodging for the local area (as available at www.gsa.gov – click on "per diem rates" under travel) for each day the resident is dislocated.  This payment will be made prior to the commencement of any retrofit work on the resident's unit, so that the resident can use the money to obtain alternative living accommodations and food while dislocated. The Rule 19 Defendants shall be under no obligation to make any unit or other space available to provide relocation facilities pursuant to this Consent Order.

54.     If a tenant refuses to allow retrofits to be made in his or her unit, the responsible HSA Defendant(s) and/or Rule 19 Defendant shall have the tenant so state in the form of a sworn declaration or a notarized letter. The responsible HSA Defendant(s) and/or Rule 19 Defendant shall

14

provide the United States documentation of its efforts to secure the tenant's assent to the retrofits, along with a copy of the tenant's written refusal in the forms described herein within fifteen (15) days of receipt thereof.  The United States may contact the tenant upon learning of the tenant's refusal.  If the tenant subsequently allows access, the responsible HSA Defendant(s) shall be required to make the retrofit.  If the tenant continues to refuse, the responsible HSA Defendants shall be relieved of their obligation to make the retrofit, unless there is a vacancy in that unit prior to the end of the term of the Consent Order.

### VIII. Retrofit Fund for Retrofitting Properties Owned by Rule 19 Defendants

55.     Within thirty (30) days from the entry of this Order, the HSA Defendants shall deposit the total sum of $410,000.00 (Four Hundred Ten Thousand Dollars) in an interest-bearing escrow account ("Retrofit Fund") to be used by Defendant HSAI to retrofit the Subject Properties owned by the Rule 19 Defendants subject to the United States' determinations and instructions.  Within fifteen (15) days of the establishment of the Retrofit Fund, Defendant HSAI will provide proof to the United States that the account has been established and the funds deposited.

56.     Any interest accruing to the Retrofit Fund will become a part of the Retrofit Fund and be used as set forth herein.

57.     The funds in the Retrofit Fund are solely to pay the costs in performing the retrofits at the Subject Properties owned by the Rule 19 Defendants identified in this Consent Order and shall not be used for any other purpose.  Such costs include labor and materials relating to the retrofits, but do not include: (i) inspection costs incurred by the Neutral Inspector to inspect the property for compliance with the Consent Order; (ii) wages, benefits, and other compensation paid to Defendant HSAI's employees; (iii) permitting costs, architectural, civil engineering, or other design-related professional services; (iv) tenant relocation and per diem costs;  (v) costs to re-perform retrofits determined by the Neutral Inspector to have been performed incorrectly; and (vi) remediation costs,

15

material, and labor to address an issue that is not included in the Statement of Work ("SOW") (referenced and described in paragraph 61 below), and accounted for in the bids developed to address a condition that existed at the Rule 19 Property prior to the retrofit and is unrelated to the retrofit, but that was merely discovered in connection with performing the retrofit and must be addressed in order to complete the retrofit (under the professional standard of care set forth in the Cooperation Agreement) (e.g., the existence of mold).

58.     Defendant HSAI shall spend the Retrofit Fund on retrofits at the properties owned by the Rule 19 Defendants in accordance with the provisions of this Section.  Retrofits shall not begin unless they have been previously approved by the United States under the provisions described in this section.

59.     The "Proposed Property Budget" for each of the properties belonging to the Rule 19 Defendants is one-third of the total amount in the Retrofit Fund for each property.  Contractors will be paid for work completed in accordance with the terms set out in the Cooperation Agreement.

60.     Within thirty (30) days from the entry of this Consent Order, the United States will provide Defendant HSAI and the Rule 19 Defendants with a list of retrofits titled, "Final Scope of Retrofits List" to be made at the Subject Properties owned by the Rule 19 Defendants.

61.     Within sixty (60) days prior to performing the retrofits, and no later than 36 months of the date of the Court's entry of this Consent Order, Defendant HSAI shall obtain and provide to the United States and the Rule 19 Defendants a "Statement of Work" ("SOW") from a licensed contractor for all the items on the United States' Final Scope of Retrofits List.   Prior to the SOW being issued, if any architectural or civil engineering drawings are required, Defendant HSAI will have those drawings prepared and will provide the United States and the Rule 19 Defendants a copy of those drawings. The United States will provide any comments on those drawings within 30 days

to be incorporated into the drawings. The SOW shall include a cost estimate, a description of the work that the contractor will perform for each item, and a schedule including an estimated completion date for the work to be performed pursuant to the SOW ("Construction Period"). The Construction Period shall not begin earlier than 60 days after the date of the SOW. Defendant HSAI shall have the contractor agree to freeze the cost of the work at the amount shown in the cost estimate for the Construction Period, including through the actual completion of the work identified in the SOW, subject to footnote 2 below.

62.     Within sixty (60) days of receipt of the SOW, the United States will provide to Defendant HSAI and the Rule 19 Defendants a list of specific retrofits from the contractor's SOW that shall be performed by Defendant HSAI at the Subject Properties owned by the Rule 19 Defendants. This list of specific retrofits from the contractor's SOW selected by the United States will become the "Retrofit Plan" for each property, i.e., "Retrofit Plan for Vistas," "Retrofit Plan for Largo at Acclaim," "Retrofit Plan for Woodland Creek," respectively. At this time, the United States will also establish a Final Property Budget for each of the Subject Properties owned by the Rule 19 Defendants. The Retrofit Plan for each Rule 19 Property will be set initially at 80% of the Final Property Budget. Defendant HSAI shall not commence the retrofit work at the Subject Properties owned by the Rule 19 Defendants until HSAI has complied with Articles 2, 7, and 8(H) of the Cooperation Agreement. If an unaccounted-for issue is raised during the completion of the retrofits, it shall be resolved as set forth in Article 4 (E) of the Cooperation Agreement.

63.     Defendant HSAI shall thereupon complete the retrofits identified by the United States in the Retrofit Plan for each Rule 19 Property within the time specified by the contractor to perform the work in the SOW, until 80% of the Final Property Budget for each property is billed by the contractor. Defendant HSAI shall have the inspection of those retrofits performed at such time (at

17

the point that 80% of the Property Budget is billed by the contractor) and, within ten days of such inspection, shall report to the United States the expenditure of the funds from the Retrofit Fund and the costs of the inspection under the Inspector Cap, and the results of the inspection consistent with Section IX of this Consent Order.  Defendant HSAI shall correct any deficiencies in the retrofits until all retrofits identified in the Retrofit Plan have been completed and certified by the Inspector as set forth in Section IX below.  After all items in the Retrofit Plan are completed and certified by the Inspector, the United States then will determine how the balance of the Final Property Budget for each property shall be used from the remaining items on the SOW.[2]  No retrofit shall be performed unless: (a) there is sufficient money in the Retrofit Fund to pay for the retrofit with a 10% Reserve;  and (b) there is sufficient money in the Inspector Cap to pay for the inspection of the retrofit; however, the United States maintains the discretion to use up the 10% Reserve to cover any remaining retrofits to be performed after all outstanding retrofits have been completed and certified by the Neutral Inspector, so long as there are sufficient funds in the Retrofit Fund and the Inspector Cap to cover the costs of the retrofit and inspection.  Regardless of the amount of money remaining in the Retrofit Fund, Defendant HSAI is required to pay all costs necessary to complete any retrofits in progress until they are certified by the Inspector.

64.     Except for the provisions in this Section, the obligations that the Defendant HSAI has with respect to the properties it owns under this Consent Order, including but not limited to the terms in Sections VII ("Retrofits at Subject Properties") and IX (Neutral Inspector), are the same obligations that the HSAI Defendant has to the Subject Properties owned by the Rule 19 Defendants.

---

[2] If, by this point, that is, after 80% of the Property Budget is billed, the initial SOW is no longer effective, HSAI shall enter a new contract for the remaining items in each Retrofit Plan, following the same procedures and criteria set forth in paragraph 63 to spend the remainder of each property's Final Property Budget.

## IX. Neutral Inspector

65.     Each responsible HSA Defendant will enter into a contract with one or more neutral inspector(s) approved by the United States ("Inspector" or "Neutral Inspector") to conduct inspections of the retrofits that have been performed under this Order at their Subject Property, and at the Subject Properties owned by the Rule 19 Defendants, to determine whether the retrofits have been completed in accordance with the specifications in the Retrofit Plan for the Subject Property contained in Appendix A, and with the instructions that the United States has provided regarding the retrofits to be made under the Retrofit Fund in Section VIII pertaining to the Subject Properties owned by the Rule 19 Defendants.  The Inspector(s) will have expertise in the FHA, the FHA Guidelines, ADA, ADA Standards, and ANSI A117.1-1986.

66.     An inspection of each Subject Property will take place within sixty (60) days of the completion of all of the retrofits to all of the accessible routes and the public and common-use areas and the covered multifamily dwelling units, or as soon as practicable thereafter for each.  Separate inspections may be conducted at different times for: (a) accessible routes and public and common use areas; and (b) covered dwelling units.  The responsible HSA Defendant(s) for each Subject Property will give the United States and the Rule 19 Defendants at least two (2) weeks' notice of the inspection and will give the United States and Rule 19 Defendants an opportunity to have their representative(s) present for the inspection.

67.     The retrofit inspections conducted by the Inspector shall be made in accordance with this Order, the Retrofit Plans in Appendix A, the specifications provided by the United States regarding the retrofits to be made at the Subject Properties owned by the Rule 19 Defendants under the Retrofit Fund in Section VIII of this Consent Order, the HUD Fair Housing Accessibility Guidelines, the ADA Standards, and Appendix J.

19

68.     The Inspector will prepare a written report setting out the results of each inspection of the Subject Property, including deficiencies, if any, and will send that report to counsel for the responsible HSA Defendant(s), the Rule 19 Defendants (where applicable), and the United States. The Inspector will take digital photographs of any deficiencies identified at each Subject Property and include such photographs in the report. The Inspector shall set forth all retrofits that have been made and certify that they are made in compliance with the terms of this Consent Order. If any of the agreed-upon retrofits have not been made or do not meet the requirements of this Consent Order, the responsible HSA Defendant(s) for that specific Subject Property will correct any deficiencies within 90 days, or as soon as practicable thereafter, and will then schedule and pay for another inspection by the same Inspector to certify the deficiencies have been corrected. Only features identified as deficient shall be reinspected. This process will continue until the Inspector certifies that all the necessary retrofits have been made. Upon the Inspector's final certification, the retrofit obligations relating to the property in question will be considered fully satisfied and discharged.

69.     The responsible HSA Defendant(s) for each Subject Property will pay an amount not to exceed $75,000.00 (Seventy-five Thousand Dollars) to the Neutral Inspector to complete the work required under this Agreement (the "Inspector Cap"). Any fees or expenses incurred by the Neutral Inspector to conduct his or her duties under this Agreement shall be charged against the Inspector Cap. After the Inspector Cap has been exhausted, the responsible HSA Defendant(s) have no obligation to pay the Neutral Inspector or to conduct inspections.

70.     Upon reasonable notice to the responsible HSA Defendant(s), representatives of the United States will be permitted to inspect the completed retrofits made in accordance with this Order, to ensure compliance; provided, however, that the United States will endeavor to minimize any inconvenience caused by such inspections. Such inspections must be conducted by the United States

within sixty (60) days of receiving the Neutral Inspector's final certification that all retrofits have been completed.

## X. Transfer of Interest in Subject Properties

71.    The sale, or any other transfer of ownership, in whole or in part, whether voluntary or involuntary, of any of the Subject Properties shall not affect the continuing obligation of the Defendants to retrofit the Subject Property for which they are responsible as specified in this Order. Should Pin Oak Elderly Associates, LP, Country View Elderly Associates, LP, and Randolph Village Associates LP sell or transfer ownership of its respective Subject Property, in whole or in part, or any portion thereof, prior to the completion of the retrofits specified in Section VII  of this Order, the responsible HSA Defendant will, at least thirty (30) days prior to completion of the sale or transfer: (a) provide to each prospective buyer a written notice that the Subject Property is subject to this Order, including specifically the obligations of the HSA Defendant(s) to complete required retrofit work and to allow inspections, along with a copy of this Order; and (b) provide to the United States, by e-mail and first-class mail, written notice of the intent to sell or transfer ownership, along with a copy of the notice sent to each buyer or transferee, and each buyer's or transferee's name, address, and telephone number.

72.    Should the Rule 19 Defendants decide to sell or transfer ownership in any of their properties, or any portion thereof, prior to the expiration of this Consent Order, the Rule 19 Defendants agree to: (a) prior to completion of sale or transfer, provide each prospective buyer a copy of the Complaint, this Consent Order, and, if applicable, a copy of a subsequent consent order or other order by the Court relating to their properties; (b) upon completion of the sale, within fourteen (14) days provide to the United States and Defendant HSAI, by electronic mail, and overnight delivery, written notice of the sale or transfer of ownership, along with a copy of the notice sent to each buyer prior to the completion of the sale or transfer, and each buyer's name, address,

and telephone number.  In connection with any such sale or transfer by the Rule 19 Defendants, this Consent Order remains in effect and applies to any of the Rule 19's successors, assigns, and/or subsequent buyers, until all its terms are satisfied.  In connection with any such sale or transfer by the Rule 19 Defendants, the completion of the retrofits required by this Consent Order resolves the claims alleged by the United States in its Complaint regarding the properties currently owned by the Rule 19 Defendants.

## XI. Prohibition against Raising Rent Prices

73.     The HSA Defendants, directly or indirectly, may not, at their respective Subject Property, raise the rent price of any dwelling unit, or demand any deposit or other fee for a dwelling unit at their respective Subject Property because of contemplated or completed retrofits in a dwelling unit.

74.     The Rule 19 Defendants, their agents and affiliated companies may not raise the rent price of any dwelling unit, or demand any deposit, or other fee for a dwelling unit at the Subject Properties because of anticipated or actual retrofits or because of other costs in connection with this Consent Order.

## XII. Non-Discrimination Requirements in Future Properties

75.     The HSA Defendants warrant that they are not currently developing any multi-family housing properties, and they hereby represent that they do not intend to develop any such housing during the course of this Order.  If this situation changes, the HSA Defendants shall provide notice to the United States within thirty (30) days of entering into any written agreements concerning any new housing development, and paragraph 76 shall therefore apply.

76.     If the HSA Defendants develop any new housing over the course of this Order, the HSA Defendants will maintain, and provide to the United States, the following information and statements regarding properties under construction and any other future covered multifamily

22

dwellings intended to be developed, built, designed, constructed, or engineered in whole or in part, by any of them or by any entities in which the HSA Defendants have a position of control as a member or manager, or have a ownership share, provided, however, that such information and statements need to be maintained and/or provided only on properties in which the HSA Defendants are actually involved, not on those properties in which they bid or express an interest, but do not become finally involved:

    i. The name and address of the property.

    ii. A description of the property and the individual units.

    iii. The name, address, and telephone number of the civil engineer(s) involved with the project.

    iv. A statement from the civil engineer(s) involved with the property acknowledging and describing his/her knowledge of and training in the requirements of the FHA and the ADA and in the field of accessible site design, and certifying that he/she has reviewed the engineering documents for the project and that the design specifications therein fully comply with the requirements of the FHA (*e.g.* the FHA Guidelines, ANSI A117.1-1986 or another HUD-recognized safe harbor), and the ADA Standards (where applicable).

    v. The name, address, and telephone number of the architect(s) involved with the property.

    vi. A statement from all architect(s) involved with the property, (1) acknowledging and describing their knowledge of and training in the FHA, 42 U.S.C. § 3406(f)(1), (f)(2), and (f)(3)(C), the FHA Guidelines, the ADA, 42 U.S.C. § 12183(a)(1), the ADA Standards, and the field of accessible site design, and (2) certifying that he/she has reviewed the architectural plans for the property and that the design specifications therein fully comply with the requirements of the FHA (*e.g.* the FHA Guidelines, ANSI A117.1-1986 or another HUD-recognized safe harbor), and the ADA Standards (where applicable).

    vii. If the engineering documents or architectural plans are revised, and the revisions could have any impact on the accessibility of the dwellings or property, each Defendant will obtain, maintain, and provide to the United

States upon request, a statement from the civil engineer(s) or architect(s) involved with the property that all specifications in the revised engineering documents or architectural plans, as pertinent, comply with the FHA, the FHA Guidelines, and the ADA, the ADA Standards, and ANSI A117.1-1986.

77.     If the HSA Defendants develop any new housing during the course of this Order, the HSA Defendant(s) will take all actions to make the construction of any property covered by paragraph 76, above, fully compliant with the FHA (*e.g.*, the FHA Guidelines, ANSI A117.1-1986 or another HUD-recognized safe harbor), and the ADA Standards (where applicable).  During the term of this Order, upon reasonable notice, the United States will be permitted full access to such properties to inspect for compliance with the FHA (*e.g.*, the FHA Guidelines, ANSI A117.1-1986 or another HUD-recognized safe harbor), and the ADA Standards (where applicable).

### XIII. Monetary Damages for Aggrieved Persons

78.     Within ninety (90) days from the entry of this Order, the HSA Defendants shall deposit in an interest-bearing escrow account the sum of $60,000.00 (Sixty Thousand Dollars), for the purpose of paying monetary damages to prospective, current, and former residents of the Subject Properties deemed by the United States to be aggrieved persons (hereinafter "aggrieved persons"), with each HSA Defendant contributing an amount to be allocated among them.  This shall be called the "Settlement Fund."  All expenses related to the establishment of the account shall be borne by the HSA Defendants.  Within fifteen (15) days of the establishment of the Settlement Fund, Defendant HSAI shall submit proof to the United States that the account has been established and the funds deposited.  No further payment to the Settlement Fund shall be required from the HSA Defendants irrespective of the number of claims made to the fund by allegedly aggrieved persons, and none of the Defendants shall have any liability to any aggrieved person following the disbursement of all Settlement Fund proceeds in accordance with this Order.  It is understood and

24

agreed that the Rule 19 Defendants are not responsible under this Consent Order for making any payments to aggrieved persons, as said payments are the sole and exclusive responsibility of the HSA Defendants.

79.     Any interest accruing to the Settlement Fund shall become a part of the Fund and be utilized as set forth herein.

80.     HSA Defendants shall be solely responsible for any taxes assessed or owed on any interest earned on money deposited in accordance with paragraph 78, above.

81.     Within sixty (60) days from the entry of this Order, the responsible HSA Defendants shall, in coordination with or through property management, send, by first-class mail, postage pre-paid, a copy of the Notice to Potential Victims of Housing Discrimination ("Notice"), set forth in Appendix D to each current tenant at each Subject Property, including the properties belonging to the Rule 19 Defendants, and to past tenants who have resided at the property over the last five (5) years.[3]  For past tenants, Defendant HSAI will mail the Notice to the forwarding address provided to the owners or managers of each Subject Property or their agents by the former tenant at the time the former tenant moved out.  Within ninety (90) days from the entry of this Order, Defendant HSAI shall provide counsel for the United States with a declaration affirming compliance with this paragraph, and a spreadsheet showing each recipient's name, address, and the date the Notice was sent.

---

[3]     Within thirty (30) days from entry of this Order, the Rule 19 Defendants shall provide Defendant HSAI an electronic file with the names and addresses of all current tenants and, to the extent available, last known addresses of any past tenants who have resided at each respective property over the last five (5) years.  Defendant HSAI shall send the Notice to the current and past tenants identified in this spreadsheet or other electronic file.  Nothing herein shall be interpreted to require any Rule 19 Defendant to create or maintain any record other than in the ordinary course, or to format or compile any record other than in the record's native format, or to undertake any effort to provide any information beyond the information contained in their records.

82.     To reasonably facilitate the United States' investigation of claims made by potential aggrieved persons, HSA Defendants and Rule 19 Defendants shall permit the United States, upon reasonable notice and by a reasonable method, to review records needed for such investigation, including but not limited to, complete tenant files, tenant lists, reasonable accommodation requests, and reasonable modification requests, provided that such persons consent to the disclosure of such information.  Nothing herein shall be interpreted to require any Rule 19 Defendant to create or maintain any record other than in the ordinary course, or to format or compile any record other than in the record's native format, or to undertake any effort to provide any information beyond the information contained in their records.

83.     Within forty-five (45) days from the entry of this Order, Defendant HSAI, in coordination with or through property management, shall, for each Subject Property owned by the HSA Defendants, cause a link to an electronic version of the Notice in Appendix D to be posted on the first page that residents of each of their properties encounter after they log into the website that is provided exclusively for tenants of those properties (hereinafter, "Tenant Portals").  The Notice will only reference the Subject Property to which each Tenant Portal applies.  The link on the Tenant Portals shall state: "Notice to Persons Who May Have Suffered from Inadequate Accessible Features at the Property" and shall appear on the upper half of the portal website, in a conspicuous font style and color.  The Notice shall remain on the Tenant Portal for at least one hundred and eighty days (180) from the date it is posted.  For the Subject Properties owned by the Rule 19 Defendants, the Rule 19 Defendants shall cause a link to an electronic version of the Notice in Appendix E to be posted on each of their Tenant Portals.  The Notice will only reference the Subject Property to which each Tenant Portal applies, and shall contain a Dropbox link, maintained by Defendant HSAI, which link shall provide an electronic version of the Notice in Appendix D.  The link on the Rule 19 Tenant

Portals shall state: "Notice to Persons Who May Have Suffered from Inadequate Accessible Features By the Original Developer of the Property" and shall appear on the upper half of the portal website, in a conspicuous font style and color.  The Notice shall remain on the Rule 19 Tenant Portals for at least one hundred and eighty (180) days from the date it is posted. Within ninety (90) days from the entry of this Order, Defendant HSAI shall provide counsel for the United States with a declaration affirming compliance with the terms of this paragraph, and a snapshot of the Tenant Portal for each property and the posted Appendix D.  Defendant HSAI shall arrange with the Rule 19 Defendants for the posting of the Notice in Appendix E on their respective Tenant Portals. The Rule 19 Defendants shall comply with the terms so stated in this paragraph.

84.     Within sixty (60) days from the entry of this Order, the responsible HSA Defendants, by and through coordination with the property management shall send a copy of the letter Notice in Appendix D to each of the organizations listed in Appendix I.

85.     Nothing in this Order shall preclude the United States from making its own efforts to locate, interview and provide notice to potential aggrieved persons.

86.     Within eighteen (18) months from the entry of this Order, the United States shall determine which persons are aggrieved and an appropriate amount of damages that should be paid to each person from the Settlement Fund.  HSA Defendants agree that the determinations of the United States shall be final, and HSA Defendants hereby waive the right to contest the United States' determinations in this or any other proceeding.  HSA Defendants agree as part of this Order that they will not seek to interfere with or oppose the United States' determinations regarding the aggrieved persons and the damages to be paid to each.

87.     Within eighteen (18) months from the entry of this Order, the United States will inform Defendants in writing of its determinations required under paragraph 86, together with a copy of a sworn declaration and a copy of a W-9 Form from each aggrieved person.

88.     After completion of the process described in paragraphs 85-86, the United States shall submit the final recommendation for distribution of the Settlement Fund to the Court for approval. The United States will request that the Court issue an Order approving or denying payment of any claims submitted for consideration.

89.     Within sixty (60) days from the Court's entry of the Order approving payment to aggrieved persons, Defendant HSAI shall deliver to the United States checks payable to the aggrieved persons, or to the aggrieved person's estate, heir(s) of their estates, or legal guardians if requested by the United States.  The United States will distribute the check to each aggrieved person – or to the executor of the aggrieved person's estate, heirs, or guardians, if appropriate – after the United States has received a signed release in the form of Appendix F.  The United States will provide Defendant HSAI with a copy of the signed release from each aggrieved person prior to distributing the check to the aggrieved person.

### XIV. Civil Penalty

90.     Within sixty (60) days from the entry of this Order, HSA Defendants will pay a total civil penalty in the amount of $5,000.00 (Five Thousand Dollars) under 42 U.S.C. § 3614(d)(1)(C) and 42 U.S.C. § 12188(b)(2)(C)(i) to vindicate the public interest, with each HSA Defendant contributing an amount to be allocated among them. This payment shall be in the form of an electronic funds transfer in accordance with written instructions to be provided by the United States. The civil penalty is a debt for a fine, penalty, or forfeiture payable to and for the benefit of the United States within the meaning of 11 U.S.C. § 523(a)(7) and is not compensation for actual pecuniary loss.

## XV. Allocation of Funds by the United States under this Consent Order

91.     The United States retains discretion to allocate any unspent funds, if such should exist, between the funds that are established in this Consent Order (i.e., the Settlement Fund and the Retrofit Fund), and make any reallocations in the Final Property Budgets for the properties owned by the Rule 19 Defendants as set forth in Section VIII above.

## XVI. Training

92.     Within thirty (30) days from the entry of this Order, the HSA Defendants will provide a copy of this Order to the Management Agents for Randolph Village Apartments, Pin Oak Village, and Woodside Village Apartments. The HSA Defendants shall secure a signed statement from the Management Agents acknowledging that he or she has received and read the Order and has had an opportunity to have questions about the Order answered.  This statement will be substantially similar to the form of Appendix G.

93.     If any HSA Defendant becomes involved in the development, design, or construction of multifamily properties during the term of this Consent Order, that HSA Defendant will ensure that its employees and agents who have supervisory authority over the design and/or construction of covered multifamily dwellings that Defendants design and/or construct have a copy of, are familiar with, and personally review, the Fair Housing Accessibility Guidelines, 56 Fed. Reg. 9472 (1991), and HUD's Fair Housing Act Design Manual, A Manual to Assist Builders in Meeting the Accessibility Requirements of the Fair Housing Act, (August 1996, Rev. April 1998).   The Management Agents for Randolph Village Apartments, Pin Oak Village, and Woodside Village Apartments will be informed of those portions of the FHA that relate to reasonable accommodations and reasonable modifications for individuals with disabilities.

94.     Within 90 days of the entry of this Consent Order, any officer of Defendant HSAI and the Chief Operating Officer of any management company for Pin Oak, Woodside, and Randolph

Village will undergo training on the design and construction requirements of the FHA and the ADA. The training will be conducted by a qualified individual unconnected to Defendants or Defendants' attorneys who has been previously approved by the United States. Any expenses associated with this training will be borne by HSA Defendants.

95.      HSA Defendants will provide to the United States in its reporting under Section XVIII, paragraph 98, the name(s), address(es), and telephone number(s) of the trainer(s); copies of the training outlines and any materials distributed by the trainers; and certifications executed by all Defendants and covered employees confirming their attendance, in a form substantially equivalent to Appendix H.

### XVII. Notice of Defendants' Non-Discriminatory Policy

96.      Within ten (10) days from the entry of this Order, the responsible HSA Defendant for Randolph Village, Pin Oak, and Woodside, and each Rule 19 Defendant for its respective property, will post and prominently display in the sales or rental offices of their respective Subject Property a sign no smaller than 10 by 14 inches indicating that all dwellings are available for rental on a nondiscriminatory basis. A poster that comports with 24 C.F.R. Part 110 will satisfy this requirement.

97.      In all advertising in newspapers and electronic media regarding the Subject Properties, or any new covered multifamily dwelling properties that an HSA Defendant may develop or construct (if applicable), the responsible HSA Defendant or Rule 19 Defendant as applicable will place, in a conspicuous location, a statement that the property contains dwelling units that include features for persons with disabilities required by the Fair Housing Act. The responsible HSA Defendant will also place the same statement in a conspicuous location on any future production or printing of hard copy media, including pamphlets, brochures and other promotional literature

regarding the Subject Properties, or any new covered multifamily dwelling properties that any HSA Defendant may develop or construct (if applicable).

## XVIII. Reporting and Document Retention Requirements

98.     In addition to the other requirements set forth in this Order, commencing six (6) months from the entry of this Order and every six (6) months thereafter for as long as this Consent Order remains in effect, HSA Defendants will submit to the United States a report concerning their compliance with all the requirements of this Order for the Subject Properties, which include properties owned by the Rule 19 Defendants.  The report shall include any documents that the responsible HSA Defendant(s) are required to submit under this Order as well as the status of retrofits, and inspections of the retrofits, at all the Subject Properties, which include the properties owned by the Rule 19 Defendants.  HSA Defendants will include in their reports an accounting of funds in the Retrofit Fund under Section VIII of this Order and the expenses relating to the Inspector Cap. The Rule 19 Defendants will cooperate with the HSA Defendants to provide the HSA Defendants information in the possession, custody, or control of the Rule 19 Defendants necessary to allow the HSA Defendants to comply with this paragraph with regard to the properties owned by the Rule 19 Defendants, and the Rule 19 Defendants shall be provided copies of these reports to the extent they concern their properties.  Nothing herein shall be interpreted to require any Rule 19 Defendant to create or maintain any record other than in the ordinary course, or to format or compile any record other than in the record's native format.

99.     For the duration of this Order as to each of them and while they still own the property, Pin Oak Elderly Associates, LP, Country View Elderly Associates, LP, and Randolph Village Associates LP, will report to the United States a description of any fair housing complaint filed with an agency or court against its respective covered Subject Property regarding discrimination on the basis of disability in housing.  This report shall be made within 30 days of each HSA Defendant's

31

receipt of the complaint.  Upon reasonable notice and upon request, the responsible HSA Defendant will also provide the United States all information in its possession concerning any such complaint. The Rule 19 Defendants will cooperate with the HSA Defendants to provide the HSA Defendants information in the possession, custody, or control of the Rule 19 Defendants necessary to allow the HSA Defendants to comply with this Consent Order with regard to the properties owned by the Rule 19 Defendants, subject to the provisions in paragraphs 44, 82-83, 97-99, 104, and footnote 3 herein. Nothing herein (a) shall require any Rule 19 Defendant to notify the United States or any HSA Defendant concerning the filing of any complaint in which the Rule 19 Defendant is named as a respondent, defendant, or other party, or (b) shall be interpreted to require any Rule 19 Defendant to create or maintain any record other than in the ordinary course, or to format or compile any record other than in the record's native format.

100.    Each HSA Defendant and Rule 19 Defendant is required to preserve all records related to this Consent Order. Each HSA Defendant is required to preserve all records related to any other covered multifamily dwellings designed, constructed, owned, operated, or acquired by them during the duration of this Consent Order.  Upon reasonable notice to any HSA Defendant, and Rule 19 Defendant, and at an agreed-upon time and place, representatives of the United States will be permitted to inspect and copy any such records or inspect any properties or dwelling units under the control of an HSA Defendant and Rule 19 Defendant bearing on compliance with this Consent Order.  Nothing herein shall be interpreted to require any Rule 19 Defendant to create or maintain any record other than in the ordinary course, or to format or compile any record other than in the record's native format.

## XIX. Duration of Consent Order

101.    This Order will remain in effect for five (5) years from the date of its entry, or until six (6) months after the Inspector has certified that all required retrofits have been completed,

whichever date is later.  However, once a Subject Property has received a certification from the Inspector that all retrofits have been completed and the United States does not object to the certification or request to conduct its own inspection pursuant to paragraph 100 within thirty (30) days after receiving the Inspector's final certification, that property and the respective Owner shall be deemed to have complied with this Order and shall no longer be subject to its terms. Defendant HSAI shall remain subject to the terms of this Consent Order for its full duration.

102.    The Court will retain jurisdiction for the duration of this Order to enforce the terms of the Order, at which time the case will be dismissed with prejudice.  The United States may move the Court to extend the duration of the Order in the interests of justice and Defendants shall have the right to oppose such motion.

103.    All Parties and Rule 19 Defendants will endeavor, in good faith, to resolve informally any differences regarding interpretation of and compliance with this Order prior to bringing such matters to the Court.  However, in the event of a failure by an HSA Defendant, or Rule 19 Defendant, to perform, in a timely manner, any act required by this Order or to act in conformance with any provision thereof, the United States may move the Court to impose any remedy authorized by law or equity, with respect to that HSA Defendant or Rule 19 Defendant, including, but not limited to, an order requiring performance of such act or deeming such act to have been performed, and an award of any damages, costs, and reasonable attorney's fees which may have been occasioned by the violation or failure to perform.  The HSAI Defendant and the Rule 19 Defendants may move the Court to impose similar remedies provided by this provision in the event of a violation of the Cooperation Agreement or provisions of this Consent Order that apply to them. All Parties and the Rule 19 Defendants may also move the Court to resolve any differences regarding the interpretation,

33

implementation, operation of and/or compliance with the Cooperation Agreement or provisions of this Consent Order that apply to them.

## XX. Time for Performance

104.    Any time limits for performance imposed by this Order may be modified by the mutual written agreement of the United States and the relevant HSA Defendants, and Rule 19 Defendants (if applicable).

## XXI. Release of Litigation Hold

105.    The Parties and the Rule 19 Defendants agree that, as of the date of entry of this Order, litigation is not "reasonably foreseeable" concerning the subject matter of the United States' complaint.  To the extent that any of the Parties and Rule 19 Defendants previously implemented a litigation hold to preserve documents, electronically stored information, or things related to the matters described herein, the party is no longer required to maintain such a litigation hold.  Nothing in this paragraph relieves the parties of any other obligation imposed by this Order.  *EtH*

106.  *The Clerk shall close this case.*

It is so **ORDERED** BY:

*Ellen L. Hollander*   *10/19/23*

United States District Court for the District of Maryland
The Honorable Judge Ellen Hollander

34

Respectfully submitted,

*On behalf of the United States:*

Dated: October 16, 2023

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

EREK L. BARRON
United States Attorney
District of Maryland

\_\_\_\_/s/_____
CARRIE PAGNUCCO
Chief, Housing and Civil Enforcement Section

\_\_\_\_/s/_____
MICHAEL S. MAURER
Deputy Chief
BETH PEPPER
JENNIFER MCALLISTER
Trial Attorneys
Housing and Civil Enforcement Section
Civil Rights Division
U.S. Department of Justice
4 Constitution Square
150 M Street, N.E., Room 6.1423
Washington, DC 20002
Phone: (202) 305-0916
Fax: (202) 514-1116
E-mail: Beth.Pepper@usdoj.gov
E-mail: Jennifer.Mcallister@usdoj.gov

*Digitally signed by KIMBERLY PHILLIPS*
*Date: 2023.10.16 13:43:34 -04'00'*

KIMBERLY S. PHILLIPS
Bar No. 811611
Assistant United States Attorney
36 S. Charles Street 4th Floor
Baltimore, Maryland 21201
Phone: (410) 209-4900
E-mail: Kimberly.Phillips@usdoj.gov

35

*On behalf of the Defendants Humphrey-Stavrou Associates, Inc.,*
*Pin Oak Elderly Associates Limited Partnership,*
*Randolph Village Associates Limited Partnership,*
*Country View Elderly Associates Limited Partnership:*

Dated: Oct 13, 2023

**Humphrey-Stavrou Associates, Inc.**
**By: Bethany H. Hooper, President**

**Pin Oak Elderly Associates Limited Partnership**
**By: Humphrey-Stavrou Associates, Inc.**, its general partner
**By: Bethany H. Hooper, President**

**Randolph Village Associates Limited Partnership**
**By: Humphrey-Stavrou Associates, Inc., its general partner**
**By: Bethany H. Hooper, President**

**Country View Elderly Associates Limited Partnership**
**By: Humphrey-Stavrou Associates, Inc., its general partner**
**By: Bethany H. Hooper, President**

*Solely as to the Form:*

Lynn E. Calkins, Bar No. 12121
Holland & Knight LLP
800 17th Street, N.W., Suite 1100
Washington, D.C. 20006
Telephone: (202) 955-3000
lynn.calkins@hklaw.com

*Counsel to Humphrey-Stavrou Associates, Inc.,*
*Pin Oak Elderly Associates Limited Partnership,*
*Randolph Village Associates Limited Partnership,*
*Country View Elderly Associates Limited Partnership*
*On behalf of the Rule 19 Defendants:*

36

*On behalf of Defendants Avanath Vista Lakes, LLC
and Avanath Largo Center, LLC:*


Dated: Oct. 13, 2023

**Avanath Vista Lakes, LLC,**
**a Delaware limited liability company**
**By: Avanath AH III Holdco, Inc.,**
**a Delaware corporation, its Managing Member**
**By:** *Ellen L. Guccione*
**[Name and Title]**
ELLEN L. GUCCIONE
EXECUTIVE V.P.

**Avanath Largo Center, LLC,**
**a Delaware limited liability company**
**By: Avanath AH III Holdco, Inc.,**
**a Delaware corporation, its Managing Member**
**By:** *Ellen L. Guccione*
**[Name and Title]**
ELLEN L. GUCCIONE
EXECUTIVE V.P.
*Solely as to the Form:*


Joshua Drian
Andrew Zimmitti (Bar No. 18539)
Manatt, Phelps & Phillips LLP
1050 Connecticut Ave., N.W, Suite 600
Washington, D.C. 20036
(202)585-6500
Jdrian@manatt.com
azimmitti@manatt.com

*Counsel to Rule 19 Defendant Avanath Vista Lakes, LLC
and Avanath Largo Center, LLC*

37

*On behalf of Rule 19 Defendant CDT SP Henson Creek LLC,*
*a Delaware limited liability company:*

Dated: 10/5/ 2023

**CDT SP Henson Creek LLC,**
**a Delaware limited liability company**
**By:  Henson Creek Manager LLC,**
**a Florida limited liability company**
**By:** _____
**J. David Page, Manager**

*Solely as to the Form:*

_____  date: 10/16/2023

Harry J. Kelly, Esq., No. 08573
Nixon Peabody LLP
799 Ninth Street, NW, Suite 500
Washington, DC 20001
(202) 585- 8712
HKelly@nixonpeabody.com

*Counsel for CDT SP Henson Creek LLC,*
*a Delaware limited liability company*